DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

# STATE OF NEW-JERSEY

AT NOVEMBER TERM, 1852.

---

## MARIEN PASSAGE v. JOHN McVEIGH.

1. If a line is described in a deed as running a certain course along the line of an adjoining proprietor, and the course given and the line called for differ, the line called for, being a fixed monument, must govern.

2. Whether certain posts not called for by a deed, are in a line called for in such deed, is a matter of fact for the jury to determine, and it is error to charge that such posts are in the line, as matter of law, although the surveyor and scrivener who run out the land and drew the deed regarded at the time such posts as being in the line.

---

This was an action of trespass by Passage against McVeigh, to which the defendant had pleaded title, and this was the only question. The cause was tried at the Mercer circuit, before Justice Randolph. The *locus in quo* was along the line between the parties, who owned adjoining tracts; each claimed it as part of his tract. The plaintiff claimed by deed, dated May 1, 1844, from S., who then owned both tracts. This deed described her lot as beginning at the N. E. corner of lot of H., and then running S. 23° E. along line of H., 7 chains 35 links, to land of M.; thence along land of M. one chain;

then parallel to the first course 7 chains 38 links; thence 79 links to the place of beginning.  By the *courses* in the deed, the lot was a parallelogram, but the fourth course was 21 links shorter than the first.  If the third course was right, and the distance of the fourth line wrong, then the *locus in quo* belonged to the plaintiff; if the course of the third line was wrong, and the length of the fourth line in the deed was right, then the *locus in quo* belonged to the defendant, who claimed under a deed from S. subsequent to the deed to the plaintiff.

The evidence showed that S. had bought the whole tract at a foreclosure sale, upon a mortgage given by the plaintiff's father. After the sale, he agreed to sell part of the premises to the plaintiff.  She told S. that she wanted the well which was on the *locus in quo ;* he told her to take what she wanted of it.  The solicitor of S. completed the arrangement with the plaintiff, intending to convey to her half the lot, as described in the old deeds, being 2 chains wide in the rear, and 1 chain 58 links in front, and charging her for it one half of the debt and costs due at the foreclosure sale.  The line was not surveyed or marked up.  Plaintiff, supposing she had bought the old well, enclosed and occupied the *locus in quo.*

The course given in the deed for the first line varied from the true line of H.; and if the third line was run parallel to that *course* the survey would have closed, and the *locus in quo* would have been outside of the deed of the plaintiff.

The court charged the jury as follows:  The plaintiff's title is the elder one; the defendant is entitled only to the residue. If on matter of fact there are serious doubts, the plaintiff is entitled to the benefit of them.  The issue is with the defendant, and if he does not make out his title he fails, and the plaintiff has a right to recover.  The damages, if any, are merely nominal, witness says $2 to the fence.  Defendant is entitled only to what is not in the plaintiff's deed.

If courses and distances in the deed will close, and there is no error or ambiguity appearing on the face of it, it is obligatory in a court of law, whether it embraces the whole or a part of the land.  The error then, if any, can only be corrected in a court of equity.  But when the survey will not close, or

when there is an ambiguity or apparent error, a court of law may resort to parol or other evidence to explain the matter and to ascertain the intention of the parties.

The intention which is to operate on the deed, is that which prevailed when the deed was made, or the survey or other transaction which controls it took place. That must control. That must control any prior construction or impression of the parties.

If Commodore Stockton obliged himself to convey to plaintiff so much of the tract as would include the well, and by the description of the deed *per se*, or, as explained by his agents who surveyed the lines and framed the deed, failed so to do, then the remedy is against the commodore, and not to affect the adjoining lands.

No doubt, from the evidence of Mrs. Crawford, it was the intention of her sister to have so much of the land as would include the well, and of Commodore S. that she should have as much or as little as she chose. No doubt that she and her sister supposed they had the well; but this intention or supposition does not go to the deed, for they had not seen it or seen the line run. It only goes to what they intended should be in the deed, not to what was in it; and if a just construction does not include the well, this intention cannot give it to her, but if it, the deed, does, then she is entitled to the well and your verdict.

Now what land is conveyed by the deed ? what, by it, was intended to be conveyed ?

It purports to be a lot of four sides—a parallelogram ; the two sides 7 chains 35 links each ; the rear 1 chain ; the front 79 links. But the course of the third line is parallel to the first, and so the deed will not close by 21 links, when by law it must close either by lengthening the fourth line or changing the course of the third.

Which is to be done, must be determined by the intention to be collected from the deed, the evidence, and all the circumstances, if not contrary to law.

According to law—

1. Established monuments must govern.

2. Either course or distance may be changed, either to correspond with monuments or to make survey close.

3. Where a parallelogram or other survey is laid out on a given line, that line, or other line extending from its two ends, constitutes a fixed monument which is to control the survey, and if necessary its course and distances.

4. When the first and second line of a square survey or parallelogram are fixed and certain, and the course and distance of the third line calls for no fixed monument, and the fourth line will not close the survey, then it is a question of intention, for a jury to determine from all the facts and circumstances and the acts of the parties themselves, whether the fourth line must be lengthened or the third one changed in its course. Either may be done.

Presuming most against the grantor, what did the commodore intend in this deed?

The old Passage tract closed its four sides: its sides were 7 chains 35 links, but courses and ends different; rear 2 chains front 1.58. It is of no consequence if the rear line runs over, and the defendant has been paid $300, or had given $300 for his tract. There was no reason why the commodore should have given the defendant $300 for it, if it is understood that he did give it. Nor is it important that a corner was cut off for Mrs. Hunter; that explains the crooked line and the mistake in the course. It lay along Hunter's tract, up to Dr. Miller's line. These are monuments controlling the course.

Mr. Green was the agent of Commodore S., Mr. Lytle was the surveyor. Both agree that the object was to divide the lot in halves, (the consideration was half the costs and decree) and to make a lot for plaintiff one chain in the rear, and seventy-nine links front. The course of the partition line was sighted; Lytle says he knew it at the time. The deed was drawn some time after, and instead of putting in that course, it was written parallel to first course, but inserting seventy-nine links for fourth course, instead of one chain. They say in effect, the distance is right, the course wrong. The well, Lytle says, was left on the defendant, but it was understood that the plaintiff was to have the use, &c.

As to possession of plaintiff, Mrs. Crawford says the fence and hedge were temporary; they supposed their deed went farther. Not enough for adverse possession, but goes to show what plaintiff thought she had. She did not know where the line of the deed was, for she had never seen it; but it is evidence for your consideration, and to you it is left.

Commodore S. may not have correctly informed Mr. Green, or Mr. G. may have mistook him; but the deed was drawn under his direction from the survey made by him and Lytle; and if they are to be believed, the intention in making the deed was to convey a lot one chain in rear, seventy-nine links in front, and no more. And if plaintiff does not obtain what she should, she must look to her agreement with the commodore.

The variation of the compass is of no consequence. Plaintiff's lot was laid out on the Hunter line as a base; from it she is entitled, according to the evidence of Green and Lytle, to have a lot one chain rear, seventy-nine links front; and a line from the *termini* of these ends excludes the trespass, and defendant would be entitled to your verdict.

But if, from all the evidence, the deed and parties intended the front and end to be each a chain, or the line can run farther east than the seventy-nine links on defendant, then the trespass is on the plaintiff and she has a right to recover."

The jury having come in on Sunday morning, ask the court for instruction.

1st. If they should find a verdict of guilty, will that extend the line of plaintiff to defendant's house?

Answer by the court. " It will have no effect, except as to this trespass."

2d. As to the second corner, whether it is at the point where the variation of the compass makes it, or at the old corner where the fence stands?

Answer. " The first and second corners are charged to be old ones—the posts; and the plaintiff's lot must be laid out from that one chain in the rear. This is matter of law, the rest is fact for the jury to find: variation of the compass is not to affect the matter."

The counsel of the plaintiff excepted to the charge of the court, as to all that part of the charge which stated that any of the matters in controversy, in regard to the lines or boundaries, or location of the land in dispute, were matters of law, and not left to the jury.

The argument was had in this court, to which the cause was removed by a writ of error, upon errors assigned upon these exceptions.

*Hageman*, for plaintiff in error ; *Vroom*, for defendant.

Opinion of the court by the CHIEF JUSTICE.

The errors assigned in this cause are founded on a bill of exceptions. The only exception contained in the bill is, " to all that part of the charge which stated that any of the matters in controversy in regard to the lines or boundaries or location of the land in dispute were matters of law, and not left to the jury." The ground of reversal, if any there be, must be found within that exception ; this court cannot look beyond it. Sitting as a court of *law*, this court reviews only errors of law, and such errors only, committed upon the trial, as are within the bill of exceptions and the assignment of errors.

The only error alleged to exist in the charge of the judge who tried the cause is in the following sentence : " The first and second courses are charged to be old ones—the posts ; and the plaintiff's lot *must* be laid out from that one chain in the rear. This is matter of law." The whole controversy is a question of boundary, depending upon the description contained in the plaintiff's deed. The location of the lot depends upon the true position of the first course in the deed, which is described as follows : " Beginning at the northeast corner of the lot belonging to Mrs. Mary Hunter, thence south twenty-three degrees east, along the line of the lands of the said M. H. seven chains and thirty-five links, to the lands of the Rev. Dr. Samuel Miller." The judge had very properly told the jury " that the plaintiff's land lay along Mrs. Hunter's tract up to Dr. Miller's line. These are monuments controlling the course." There can be no gore or space between the west line of the

plaintiff's lot and the east line of Mrs. Hunter's lot. The two lines are identical; and the question was, where is the true east line of Mrs. Hunter's land? Is it on a line drawn between the two posts spoken of by the witnesses? The counsel and the surveyor, who examined the lot prior to the making of the deed, "considered" *that* as the true line. In measuring the front and rear of the lot, they measured from those posts. The witnesses call these posts monuments, and they doubtless were the monuments used by them in making the measurements; but they are not monuments called for in the deed. The description in the deed calls for the line of the Hunter lot, and wherever that may be, there the line of the plaintiff's lot must be also. Now there is no satisfactory evidence to show that those posts were in the Hunter line. It is admitted by the witnesses that no survey was made, and no means adopted to determine the true line of the Hunter lot. The counsel says expressly that, as the parties were relatives, he was not precise in fixing it. The surveyor says "the posts were fixed, and *supposed* to be the corners of Mrs. Hunter." But, he adds, " we did not ascertain the corners from any old deeds. I surveyed no lines; I made no map." Neither Mrs. Hunter nor the plaintiff were present when the lot was attempted to be located, and neither, therefore, can be bound by what the counsel and the surveyor thought or said respecting it. The only evidence that those posts are in the true line of the Hunter lot, is the fact stated by the surveyor, that the fence is an old fence, and stands where it always did. By " *always*," the witness can only mean as long as he has known it. But whether he has known the fence five or ten, or twenty years, does not appear. If the fence be twenty years old, and there has been an adverse possession for that length of time, it may serve to determine the true line. But there is no satisfactory proof that the fence was sufficiently old to give title by possession. The position, then, of the fence or of the posts referred to by the witnesses settles nothing. The question still remains, where is the true last line of the Hunter lot? There are facts in the case which tend strongly to the conclusion that the line between the posts is not the true east line of the Hunter lot; but whether

this be so, or not, is a question of fact for the jury, not of law for the court. The judge erred in charging the jury that the posts or the old fence marked the true line of the lot. · It is not improbable that, upon the trial, it appeared satisfactorily that the posts were in the true line of the lot; but it does not so appear upon the case before this court.

It is worthy of notice that this is not a mere question of damages. The defendant pleaded title. The issue is upon a question of title, and the verdict settles that the plaintiff's title covers the *locus in quo*. If the judgment stands, and the line of the Hunter lot should prove to have been erroneously located to the prejudice of the defendant below, she is remediless.

The judgment should be reversed, a *venire de novo* awarded, and the record remitted, to be proceeded in according to law.

*For reversal*—The CHIEF JUSTICE and Judges ELMER, HAINES, POTTS, CORNELISON, ARROWSMITH, SCHENCK, and WILLS.

*For affirmance*—The CHANCELLOR, VALENTINE, and OGDEN.