### WILLIAM J. CORBETT *vs.* MICHAEL CRAVEN.

Hampden.     September 26, 1906. — October 16, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, & BRALEY, JJ.

*Equity Pleading and Practice,* Decree.    *Judgment.*    *Res Judicata.*

A decree in a suit in equity of " Bill dismissed " is a final decree upon the merits.

Between the parties to a suit in equity or an action at law or their privies a final decree or judgment on the merits includes and disposes of everything that was litigated or might have been litigated in the case brought by the plaintiff before the court.

A decree of " Bill dismissed " in a suit in equity by the trustee of the estate of a bankrupt, to set aside certain bills of sale and to obtain possession of personal property in the hands of the defendant received by him from the bankrupt, is a bar to an action of tort against the same defendant, by one who while the suit in equity was pending purchased from the trustee certain personal property of the bankrupt not covered by the bills of sale, for the alleged conversion of this property, if the property alleged to have been converted was included in the property claimed by the trustee as plaintiff in the suit in equity, although the parties in that suit may have omitted to distinguish it from the property described in the bills of sale.

TORT for the alleged conversion of certain machinery of woollen mills. Writ dated March 28, 1905.

The answer as amended alleged that such title as the plaintiff has in the property described in his declaration he acquired on September 18, 1901, by purchase from Nathan P. Avery of Holyoke in his capacity of trustee in bankruptcy of the estate of James Connor of Holyoke; that previously, on August 15, 1901, Avery as such trustee filed in the Superior Court in the county of Hampden a bill in equity against the defendant in this action alleging that the property in question was claimed by the defendant but that it belonged to him as trustee as aforesaid, and praying that the title and possession of the property be decreed to him as such trustee; that the defendant admitted claiming the property and denied Avery's title, and the case was tried on the merits on the issue of the title as of the day of the date of the bill; that the findings were against the plaintiff in equity, Avery, and in favor of the defendant; that a final decree was entered dismissing the bill; that this decree now remains in full force and unreversed; and that the question of the ownership of the property in question has been fully adjudicated.

At the trial in the Superior Court before *Hitchcock*, J. the following facts appeared:

From a date earlier than October 12, 1883, to June 18, 1901, James Connor of Holyoke was engaged in the manufacture of woollen cloth and shoddy in two mills in that city known as the New York Mill and the Bigelow Street Mill. The New York Mill contained eleven sets of woollen machinery. A set of woollen machinery is a set of cards, together with the necessary complement of looms, spinning, finishing machinery, etc. The quantity and kind of machinery constituting the complement of a set of cards is determined by the character of the required product in any given case. In the case at bar changes in the product from time to time made necessary or expedient the purchase and addition of some of the machinery described in the plaintiff's declaration. The Bigelow Street Mill contained four sets of woollen machinery. On October 12, 1883, Connor sold to Michael Craven, the defendant, four sets of woollen machinery in the Bigelow Street Mill evidenced by a bill of sale, of which the following is a copy:

> "Holyoke, Mass., Oct. 12, 1883.
>
> "Michael Craven,
>
> "Bought of Connor Bros.
>
> "4 Entire Sets Woolen Machinery stored in
> Woolen Mill, corner of Cabot & Bigelow
> Streets for Ten Thousand Dollars,            $10,000.
>
> "Received payment,
>
> "Connor Brothers."

On April 6, 1885, Connor sold to Craven eleven sets of woollen machinery including all the machinery, tools, shafting, etc., then owned by him in the New York Mill, evidenced by a bill of sale of which the following is a copy:

> "Holyoke, Mass., April 6, 1885.
>
> "Michael Craven, South Deerfield, Mass.,
>
> "Bought of Connor Brothers.
>
> "Eleven sets of Woolen Machinery for Twenty
> Thousand Dollars,                $20,000
>
> and other valuable consideration, the same being free from all incumbrances and includes all of the machinery, tools, shafting and hangers, bought of Henry Hilton, now on the premises described hereafter, with all machinery and improvements added thereto since said purchase. Said machinery is at present stored in the brick woolen mill buildings owned by the Holyoke Water Power Co., situated on Main street, Holyoke, and known as the New York Mill.
>
> "Received payment,
>
> "Connor Bros."

Immediately after the sale of April 6, 1885, Craven leased to Connor by oral agreement the property acquired by him by these two purchases upon Connor's oral agreement to pay a certain annual rental, and also to pay taxes, insurance and to make repairs. The defendant contended at the trial that, in addition, Connor agreed "to keep up the depreciation, or to keep depreciation good." This was denied by the plaintiff. Connor continued to use the property as such lessee until his bankruptcy in 1901. On March 10, 1891, Connor bought twenty

Knowles broad looms and installed ten of them in the Bigelow Street Mill and ten in the New York Mill, and on the same date sold them to Craven, as evidenced by a bill of sale, of which the following is a copy:

"Holyoke, Mass., March 10, 1891.
"Michael Craven,
                    "Bought of Connor Bros.
"10 'Knowles' Broad Looms, $275,                    $2,750
          stored for said M. Craven in Bigelow Street
          Woolen Mills, Cor. of Cabot St.
"10 'Knowles' Broad Looms, $275,                    $2,750
          stored for said M. Craven in New York
          Mills on Main St. Cor. of South St.
                                                    ————
                                                    $5,500
                    "Received payment,
                                        "Connor Bros."

On June 18, 1901, Connor was adjudicated a bankrupt.

On August 3, 1901, Nathan P. Avery, Esquire, of Holyoke, was appointed trustee in bankruptcy of Connor's estate, and on August 6, 1901, he qualified by filing a bond. On August 15, 1901, Mr. Avery, as such trustee, brought a bill in equity against the defendant Craven in the Superior Court, seeking to set aside the conveyance of the personal property to Craven and to acquire possession of that property. The bills of sale therein referred to were the same as those above set forth. The material portions of the bill are quoted in the opinion. The case was referred to a special master who filed a report. On March 31, 1902, the Superior Court made a decree that the bill be dismissed with costs.

On September 18, 1901, Avery as trustee sold to William J. Corbett, the plaintiff, all the woollen machinery of the estate not covered by the bills of sale to Craven, which included the machinery for the conversion of which this action was brought. At the time of making this sale the trustee was almost wholly ignorant of the amount of machinery not covered by the bills of sale.

After April 6, 1885, and before June 18, 1901, Connor purchased and added to the machinery in the two mills from time

to time certain machines, parts of machines and other manu-
facturing implements besides the twenty Knowles broad looms
heretofore referred to, and all of the property sued for in this
action was property so added after April, 1885. Such additions
were of less value than the machinery conveyed to Craven.
All the machinery in the shoddy mill building at the Bigelow
Street Mill and some of the machinery in the woollen mill build-
ing at the same mill belonged to Connor and passed to Avery,
trustee, and never belonged to Craven, but was sold by the trustee
before the sale to the plaintiff.

At the trial the parties agreed in writing to the following
facts:

"1. Mr. Avery never acquired any interest or title in the
goods sued for other than such interest or title as he acquired
by virtue of being appointed trustee in bankruptcy of Connor.

" 2. All the property mentioned in the declaration was from
the date of Connor's adjudication in bankruptcy to the date of
the dismissal of the equity suit, Avery, Trustee vs. Craven,
located in the buildings and rooms therein specified in the dec-
laration, and none of the property so mentioned was included in
the exceptions set out in paragraph numbered three of the bill
of complaint in the equity suit.

" 3. Such title as the plaintiff has was acquired by virtue of
a sale on September 18, 1901, by Avery as trustee, of all the
machinery of the bankrupt estate not covered by the bills of sale
given by Connor to Craven, the defendant, on October 12, 1883,
April 6, 1885, and March 10, 1891."

4. That certain items named by their numbers should be
stricken from the declaration.

At the trial it was contended by the defendant that all the
property described in the declaration passed to him by virtue of
the condition in the contract of letting that Connor should keep
the depreciation good. It further was contended by the defend-
ant that at each of the different times when additions were made
to the plant by Connor, certain oral agreements were made by
Connor with the defendant, by virtue of which the defendant
gained title to all of the property in controversy.

The defendant requested the court to make the following
rulings:

" 1.  On all of the evidence the plaintiff cannot recover.

" 2.  The record of Avery Trustee *v.* Craven and the agreed facts preclude the plaintiff from recovering.

" 3.  The decree in Avery Trustee *v.* Craven constitutes a bar to the plaintiff's recovery in this action.

" 4.  The decree in Avery Trustee *v.* Craven is a conclusive determination that Avery, as against Craven, did not own the property in question in this suit and is binding on Corbett who purchased from Avery while that suit was pending.

" 5.  The decree in Avery Trustee *v.* Craven is conclusive by way of estoppel that Avery, as against Craven, did not own the property in question in this suit and also concludes Corbett who purchased from Avery while that suit was pending."

The judge refused to make any of these rulings and submitted the case to the jury under instructions not excepted to.  The jury returned a verdict for the plaintiff in the sum of $4,696.02 ; and the defendant alleged exceptions.

*C. H. Beckwith*, for the defendant.

*C. T. Callahan*, for the plaintiff.

KNOWLTON, C. J.  This is a suit for the conversion of certain machinery.  The question presented by the bill of exceptions is whether the plaintiff is barred by a former decree for the defendant in a suit in equity.  That suit was brought by the person from whom the present plaintiff took his title *pendente lite*, and the decree is binding not only upon the parties to it, but upon their privies.  There is no dispute that the present plaintiff is affected by it as the plaintiff in that suit would have been if he had not parted with his title.  *Sawyer* v. *Woodbury*, 7 Gray, 499, 502.  *Borrowscale* v. *Tuttle*, 5 Allen, 377.  *Haven* v. *Adams*, 8 Allen, 363.  The decree was " Bill dismissed," which is a final decree upon the merits that settles forever all matters involved in the suit.  *Snell* v. *Dwight*, 121 Mass. 348.  *Foote* v. *Gibbs*, 1 Gray, 412.

If the question were, What is the effect of the judgment in a collateral proceeding ? the case would be different, and the answer would be, Only to settle such matters as were actually tried and adjudicated.  But as a final disposition of the case, a judgment on the merits includes everything that was litigated, or that might have been litigated, in the case brought by the plaintiff

before the court. *Foye* v. *Patch*, 132 Mass. 105, 110. *Watts* v. *Watts*, 160 Mass. 464, 465. *Butrick, petitioner*, 185 Mass. 107, 113. There is nothing in the decision in *Waterhouse* v. *Levine*, 182 Mass. 407, adverse to this view, although some of the language in the opinion is broader than the case called for. The cause of action in that suit was not the same as that to which the judgment in the former action related, but came into existence after the former action was brought. Although the two actions related to the same transaction, it was competent to show that the last was for a cause of action which had lately arisen, and which could not be affected by a judgment founded on different conditions existing previously.

We are, therefore, brought to the question which has been most discussed, namely, whether the suit in equity included the present cause of action. The plaintiff in equity was the trustee of one Connor, a bankrupt, and he averred in the third clause of his bill "that the said bankrupt owns and has located in the brick buildings at No. 649 Main street in said Holyoke, called the New York Mills, all the machinery, tools and manufacturing implements located in said mills and all machinery in the mills situated at the corner of Cabot and Bigelow streets in said Holyoke, called the Bigelow Street Mills of the Holyoke Water Power Company, of great value and all of which property is claimed to be owned by Michael Craven of Springfield in said county." Then followed an exception of certain machinery which is immaterial to this case. The present action is to recover for a conversion of a part of the machinery in these mills. In the fourth clause of the bill, after an averment in regard to the purchase "of all of the above described personal property " by the bankrupt, the plaintiff charged, " that later in the years 1883 and 1885 and 1891 Michael Craven claims that the property was conveyed to him on the payment of certain amounts." In the fifth clause he charged "that the said Michael Craven did not make the purchase of any of the personal property above mentioned," and that his alleged title was fraudulent as against creditors.

The defendant's answer was an admission " that he claims to be the owner of certain machinery, tools and manufacturing implements located in the New York Mills, and all the machinery

in the Bigelow Street Mills, excepting . . . as alleged in the third paragraph of the plaintiff's bill, and says he became the owner thereof by purchase from said James Connor in the years 1883, 1885 and 1891." The other admissions of the answer are immaterial, and there was a denial of all allegations not expressly admitted. In his prayer for relief the plaintiff asked, among other things, that the title to all this personal property be decreed to be in him.

Here, then, was an issue including all the property referred to in the present action, and by a decree dismissing the bill the issue was determined in favor of the defendant. It now appears that the principal matter to which the testimony at the hearing in equity was directed was the property covered by the three bills of sale given by Connor to the defendant. There was other property in these mills which was not included in these bills of sale, which the defendant contends passed to him from Connor, under other agreements. In regard to this the jury in the present action has found for the plaintiff. But if it was included in the claim made by the bill in equity, the decree in that suit was final and conclusive as to the title, even if the parties omitted to distinguish the property from that described in the bills of sale.

The language of the bill is plainly inclusive of it, and there is nothing in the answer that limits the issue tendered by the plaintiff in the statement of his claim and of the defendant's adverse claim. The jury should have been instructed in accordance with the contention of the defendant.

*Exceptions sustained.*