MARY L. WATKINS *v.* GEORGE W. CHILDS.

January Term, 1907.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, POWERS, and
MILES, JJ.

Opinion filed May·15, 1907.

*Boundaries — Establishment — Equity Jurisdiction — Scope of
Remedy — Foundation of Remedy — Necessary Parties —
Pleading—Demurrer—Admissions—Averment on Informa-
tion and Belief.*

There must exist some equity superinduced by the defendant, or a
ⁿdanger of a multiplicity of suits, tó warrant an application to a
court of chancery to ascertain a confused boundary.

The scope of the equity jurisdiction to ascertain a confused boundary
is not limited to ascertaining the boundary in question; but, if the
original location of the boundary cannot be determined, the court
may require the defendant to make good to the orator, as from
a common fund, his proper quantity of land out of the land of
which the defendant is possessed.

Hence, in an equity proceeding to ascertain a confused boundary, it
is necessary for the orator to show that some of the land, in re-
spect of which the relief is sought, is in the possession of the de-
fendant.

The established foundations of the equity jurisdiction to ascertain
confused boundaries, are, fraud or misconduct on the part of the
defendant resulting in a confusion of the boundary in question,
a relation between the parties which makes it the duty of one
of them to preserve and protect the boundary, coupled with such
neglect or misconduct on his part as results in the confusion of
the boundary, and the necessity of a resort to equity to prevent
a multiplicity of suits.

Before a court of equity will exercise its jurisdiction to ascertain a
confused boundary, all persons interested, whether their estates
are present or future, must be made parties.

Where there is a demurrer to the whole bill in equity, and there is any relief to which the orator is entitled on the case stated, the demurrer fails.

Where, in an equity proceeding to ascertain confused boundaries, two lines were involved and several persons not made parties were interested in land bounded by one of the lines, a demurrer to the whole bill fails where it appears that all persons interested in the lands affected by the other line are made parties.

On a demurrer to a bill in equity there is an essential distinction beteween an allegation in the bill of information and belief, and an allegation of *fact* on information and belief.    In the one case, the demurrer admits only that the orator is so informed and believes.  In the other, if the allegation is well pleaded in that form, the admission is that the *fact* is as alleged.

In a suit in equity, any fact material to the orator's case, but which is presumably within the personal knowledge of the defendant and presumably not within the personal knowledge of the orator, is well pleaded in the bill by an averment thereof on information and belief; and, therefore, such fact so pleaded is admitted by a demurrer to the bill.

On a demurrer to a bill in equity to ascertain disputed boundaries, the allegations of the bill examined, and *held* insufficient to establish a necessity for equitable interference.

APPEAL IN CHANCERY.   Heard on demurrer to the bill at the August Term, 1905, Grand Isle County, *Tyler,* J., presiding. Demurrer sustained, and bill adjudged insufficient for want of equity.   The defendant appealed.   The opinion fully states the case.   See 79 Vt. 234.

*H. S. Peck* for the oratrix.

The bill fully sets forth the facts necessary to warrant an application to a court of chancery for the appointment of a commission to determine the two confused boundaries therein described.   Pom. Eq. Jur. §1384; 2 Leading Cases Eq. 4 Am. Ed. 850; *Wake* v. *Conyers,* 1 Eden 331; *Perry* v. *Pratt,* 31 Conn. 433; *Wetherby* v. *Dana,* 36 Cal. 255; *Hill* v. *Proctor,* 10 W. Va. 77; *Ashurst* v. *McKenzie,* 92 Ala. 484; *Boyd* v.

*Dowie,* 65 Barb. 237; *Murphy* v. *Lincoln,* 63 Vt. 280; High, Injun. 2nd Ed. 457; *Watson* v. *Sutherland,* 5 Wall. 79; *Boyce* v. *Grundy,* 3 Pet. 210; *Gormley* v. *Clark,* 134 U. S. 338; *Henderson* v. *Johns,* 13 Colo. 280; *Godfrey* v. *White,* 60 Mich. 443; *McKinney* v. *Curtiss,* 60 Mich. 611; *Morse* v. *Nicholson,* 55 N. J. Eq. 705.

*Lee S. Tillotson* for the defendant.

Equity has no jurisdiction to determine which of two lines is the true boundary. *King* v. *Brigham,* 23 Ore. 262, 18 L. R. A. 361.

The oratrix must show that resort to a court of chancery is necessary. *Miller* v. *Warmington,* 1 Jac. & W. 464; *Metcalf* v. *Beckwith,* 2 P. Wms. 376; *Nye* v. *Hawkins,* 65 Tex. 600.

POWERS, J.   These parties occupy adjoining farms in the town of Grand Isle.   The farm of the oratrix, known as the Hyde-Farm, lies south of the one occupied by the defendant, which is known as the Sampson Farm.   A highway runs through the farms in a northerly and southerly direction.   The Hyde Farm originally embraced all the territory of lot No. 272, but a small piece of about eight acres out of the northeast corner of the lot now belongs to the defendant, and is occupied by him in connection with the Sampson Farm.   This parcel is known as the Childs Lot and was carved out of the Hyde Farm in 1867 by an instrument describing it as follows: "Beginning at the northeast corner of lot No. 272, running westerly on the north line of said lot eighty-five rods to the west side of the highway, then southerly on the west line of the highway equal to 14½ rods due south to a stake, thence easterly parallel with the north line of said lot to the east line of the lot to a stake 14½ rods from the northeast corner of the lot, thence northerly on the east line of the lot to the place of beginning, containing about eight acres."

The north line of lot No. 272 is shown to be a straight line running from the northeast corner through to a monument on the shore of Lake Champlain.

This suit concerns, (1) the location of so much of this lot line as lies west of the highway mentioned; and (2) the location of the south line of the Childs Lot above described.

From 1867 to 1893 (the year the defendant acquired title to the Childs Lot) the two stakes mentioned in the above description remained standing. And while there was no fence on that line, there came to be a well defined line of cultivation extending along the south side of the Childs Lot between the stakes mentioned, caused by the ploughing and tilling of the lands by their respective owners. These stakes and the line of cultivation have constituted the only visible boundary between the Hyde Farm and the Childs Lot from 1867 to their removal or obliteration as hereinafter set forth. Since the defendant bought the Childs Lot, the two stakes have, without the oratrix's knowledge or consent, been removed; and, on information and belief, it is alleged that the defendant removed them. It is further alleged, on information and belief, that the defendant has, during his occupancy of the Childs Lot, ploughed over the true south line of his said lot, without regard to the line of cultivation alluded to, and has thereby obliterated and destroyed "for the most part, if not wholly," said line of cultivation. It is further alleged that a dispute has arisen between the parties over the location of this line dividing the Childs Lot from the oratrix's land, and that the dispute and consequent confusion and uncertainty as to where said line is was caused by the removal of said stakes and the "negligence, misconduct, wilful and unlawful acts of the defendant in removing the monuments of, and otherwise effacing said true dividing line, and in ploughing and otherwise tilling the aforesaid land, and obliterating the line of cultivation," without the oratrix's consent and against her protest, and "while she was otherwise in occupancy and control" of her land.

Since the defendant has lived on the Sampson Farm, he has, unlawfully and without right, it is said, removed the fence which for many years stood on the north line of lot No. 272 dividing the farms on the west side of the highway. And, on information and belief, it is alleged that the defendant has cut a line tree, and destroyed other landmarks and monuments on that line west of the highway; whereby great confusion and obscurity exist as to the true location of that line, which is

now in dispute between the parties.   It is also alleged that the
defendant has removed the fence which formerly stood on the
north line of lot No. 272 east of the highway, and that by so
doing many of the old monuments and landmarks which located
the original and true lot line on that side of the highway have
been removed, obliterated or destroyed, whereby confusion and
uncertainty have arisen as to the location of that part of the line.

The defendant has built fences along the two lines concerned
in this suit, on locations "arbitrarily" fixed by him as the true
ones.

The bill shows that divers persons other than the defendant
are interested in the Sampson Farm, as part owners and other-
wise, but the defendant's ownership of the Childs Lot is not
questioned.

The prayer is for the appointment of a commission to deter-
mine the two boundaries hereinbefore referred to.   The bill is
demurred to for want of equity and for want of proper parties.

The appointment of commissions to ascertain confused
boundaries is a very ancient branch of the jurisdiction of the
court of chancery.   Its origin, however, is involved in much
obscurity and remains largely a matter of conjecture.   And,
whether it originated in the equity of preventing a multiplicity
of suits, as asserted by Lord Keeper Henly (afterwards Lord
Chancellor and Earl of Northington) in *Wake* v. *Conyers*, 1
Eden 331, or arose from cases in which the parties consented to
a commission as surmised by Lord Chancellor Thurlow in *St.
Luke's* v. *St. Leonard's*, 1 Bro. Ch. 40, or was founded upon
two ancient writs found in the Register, as was thought by Sir
William Grant, Master of the Rolls, in *Speer* v. *Crawter*, 2 Mer.
410, or was borrowed from the civil law as suggested in the note
to *Wake* v. *Conyers*, 2 Leading Cas. Eq. 439, it is certain that
at a very early time it came to be looked upon with disfavor
and was exercised with caution.   The Lord Keeper in *Wake* v.
*Conyers*, decided in 1759, expressed much jealousy of the juris-
diction and said that such suits were "very far from deserving
encouragement."   Lord Chief Baron MacDonald said in *Atkins*
v. *Hatton*, 2 Anstr. 386, that it was a jurisdiction "which courts
of equity have always been very cautious of exercising."   Lord
Thurlow is said in *Godfrey* v. *Littel*, 2 Russ. & Myl. 630, to have
concurred with Lord Northington in manifesting an inclination

to narrow rather than extend the jurisdiction. Nor has there been any disposition manifested on the part of American Chancellors to extend the jurisdiction beyond the limits which came to be pretty clearly defined in England. All now agree that a controversy over the location of a boundary between independent proprietors does not of itself afford sufficient ground for equitable interference. Indeed, a *confusion* of boundaries, alone, does not; there must exist some equity superinduced by the act of the party defendant, or a danger of a multiplicity of suits, to warrant an application to the court of chancery for the appointment of commissioners. *Wake* v. *Conyers, supra; Speer* v. *Crawter, supra; Marquis of Bute* v. *Glamorganshire Canal Company,* 1 Ph. 681; *King* v. *Brigham* (Ore.) 18 L. R. A. 361; *Humboldt County* v. *Lander County,* (Nev.) 26 L. R. A. 749.

It is to be observed that the scope of this equity is not alone to ascertain the boundary in question according to its true location. It goes farther than that. And, when the original location cannot be found, it will require the defendant to make good to the plaintiff—as from a common fund—his proper quantity of land out of the land of which the defendant is possessed. *Atty. Gen.* v. *Stephens,* 6 De Gex, M. & G. 111; *Speer* v. *Crawter, supra; Ashton* v. *Lord Exeter,* 6 Ves. Jr. 288; *Leeds* v. *Strafford,* 4 Ves. Jr. 180,—which affords a potent reason why a court of equity should proceed with caution when asked to exercise this jurisdiction.

In considering what will constitute a sufficient ground to call into exercise this jurisdiction of the court of chancery, some difficulty arises in determining what will constitute an "equity superinduced by act of the party." But it seems clear from the authorities that the established foundations of the jurisdiction are: (1) fraud or misconduct on the part of the defendant resulting in a confusion of the boundary in question; (2) a relation between the parties which makes it the duty of one of them to preserve and protect the boundary, together with such neglect or misconduct on the part of him on whom the duty rests as results in the confusion of the boundary; (3) the necessity of a resort to equity to prevent a multiplicity of suits.

Accordingly it is held that if the defendant gradually encroaches, as by ploughing or digging too near—*Wake* v. *Con-*

*yers, supra; Marquis of Bute* v. *Glamorganshire Canal Co., supra;*—or by moving a fence,—*Guice* v. *Barr*, 130 Ala. 570,— a court of equity will interfere. So when a tenant, whose duty it is to keep separate his landlord's land from his own, permits the boundary between the properties to become confused so that the land of the landlord cannot be distinguished from that of the tenant, equity will take jurisdiction. *Atty. Gen.* v. *Fullerton*, 2 V. & B. 264.

But before that court will act, even in such cases, all persons interested, whether their estates are present or future, must be made parties. 4 Pom. Eq. §1385, n. 6; *Rayley* v. *Best*, 1 Russ. & Myl. 659. This requirement precludes the court of chancery from taking action regarding the line dividing the farms on the west side of the highway. For, as we have seen, several persons not here parties are interested in the title to the Sampson Farm. But the demurrer on the ground of lack of parties is not limited to that part of the bill which seeks the establishment of that line; it is to the whole bill; and the rule is that when the demurrer is to the whole bill and there is any relief to which the plaintiff is entitled on the case made, the demurrer fails. Story Eq. Pl. §443. The parties to the controversy on the east side of the highway, however, are complete. So it remains to consider whether the court of chancery can, upon recognized principles, proceed to determine the boundary on that side of the highway,—the boundary between the oratrix's land and the Childs Lot.

Does the bill show fraud or misconduct on the part of the defendant, which has resulted in a confusion of the boundary?

This line was marked originally and down to the time the defendant took title to the Childs Lot (1893) by a stake standing at each end of it. Between these stakes (except in the highway) had been formed a ridge or line of cultivation which marked the boundary, and was recognized by the respective owners as such. This ridge the defendant ploughed and obliterated, and the plaintiff insists that this brings the case within the decisions already alluded to. But as long as the stakes stood no confusion could result from the ploughing or any other source, for the boundary was a straight line drawn from one stake to the other. So the ploughing alone, even if wrongful, confused nothing. The removal of the stakes by the defendant is charged

on information and belief; and the question arises whether or not this allegation of fact, being so pleaded, is admitted by the demurrer; for if it is not, the confusion is not shown to have been caused by the defendant. It is to be borne in mind that the allegation is not merely that the oratrix is informed and believes that the defendant removed the stakes; the oratrix says that she is informed and believes *and therefore avers* that he removed them. Under the first form of averment it is properly held that a demurrer only admits that the complainant is so informed, and that he believes the fact so to be. This is plainly correct, for the information and belief is the only *fact* alleged at all. *Walton* v. *Westwood,* 73 Ill. 125; *Cameron* v. *Abbott,* 30 Ala. 416; *Messer* v. *Storer,* 79 Me. 512, 11 Atl. 275. This is the doctrine laid down in Story Eq. Pl. §§241, 256. But the author goes no further; nor do the cases cited in support of the text. Yet it is held in *Trimble* v. *Amer. Sug. Ref. Co.,* (N. J.) 48 Atl. 912, that an allegation of fact based on information and belief is not admitted by demurrer; and the case is put solely on the text and cases of Story above referred to,— which by no means warrant the conclusion reached in that case. There is a vast difference between a mere allegation *of* information and belief, and an allegation of a fact *on* information and belief. The New Jersey court evidently failed to note this distinction in the forms of averment. The Trimble Case has been followed to some extent and it seems to have remained for the Michigan Supreme Court in the recent case of *Bates* v. *City of Hastings,* 108 N. W. 1005, to correct the error by pointing out this distinction between the two forms of averment. In that case it is said that authorities were cited in argument which assert that a demurrer does not admit a fact charged on information and belief, and that all such authorities are based upon the Trimble Case; which case the Michigan court declines to follow, and holds that facts charged on information and belief are admitted by demurrer. We also decline to follow the Trimble Case, though we are not prepared to adopt the Michigan rule without qualification. We think an allegation of fact based upon information and belief is admitted by demurrer when, and only when, it is an allegation which, according to the established rules of equity pleading, may properly be so charged. If the allegation meets this requirement it is well pleaded; other-

wise, not.   The rule is that a demurrer admits only facts well
pleaded.   *Griffin* v. *Gibb,* 67 U. S. 519, 17 L. Ed. 353; *Smith* v.
*Allen,* (N. J.) 21 Am. Dec. 33; *Roby* v. *Cossitt,* 78 Ill. 638;
*Pearson* v. *Tower,* 55 N. H. 36; *Churchill* v. *Cummings,* 51 Mich.
446; *Matthews' Case,* 1 Maddock-558; Story Eq. Pl. §452;
Fletcher Eq. Pl. §199; Mit. & Tyl. Eq. Pl. 306, n. 1.

It is an elementary rule that all facts material to the plain-
tiff's case must be averred positively 'and with certainty; but
this rule is relaxed in the case of an averment of a fact which
is presumably within the personal knowledge of the defendant
and presumably not within the personal knowledge of the plain-
tiff.   It is held in *Campbell* v. *R. R. Co.,* 71 Ill. 611, that an
allegation of a fact within the defendant's knowledge, of which
discovery is sought, is sufficient though made on information
and belief.   The fact that discovery is sought cannot control
the sufficiency of such an allegation and the rule is the same
whether discovery is sought or not,—especially under a chancery
rule like ours which requires the defendant to answer as fully,
directly and particularly to every material allegation of the bill
as·if he had been particularly interrogated in respect thereto.
Ch. Rule 20.   In *Aiken* v. *Ballard,* Rice Eq. 13, it is held that
when a fact essential to the complainant's case is charged to be
within the defendant's knowledge only, or must of necessity
be so, a precise allegation of the fact is not necessary.   The
allegation of such a fact is, we think, direct and positive within
the rule, though made on information and belief.

In *Mayor of Wilmington* v. *Addicks,* (Del.) 44 Atl. 781,
an allegation in this form, "your orator is informed, believes
and charges," etc.—essentially an allegation on information and
belief—was held to be admitted by demurrer, but the opinion
does not discuss the question.   It was alleged in that case that
the defendants were, in the matters complained of, pretending
to act as the directors of a certain corporation, the legal organi-
zation of which was, on information and belief, denied.   The
facts concerning the organization of the corporation would not
naturally be within the knowledge of the orator, but presum-
ably would be within that of the defendant, for they would
have access to the corporate records.   So we think that case is
really in harmony with our views above expressed.   Of the same
character was the allegation in *Bates* v. *City of Hastings,* for

it referred to the defendants' intention regarding the sale of certain bonds; a matter of which the plaintiff would be expected to know nothing, but about which the defendants would know everything.

So we hold that the demurrer here admits the fact that the defendant removed the stake marking the line,—a fact presumably within his knowledge since it was his own act. The act was wrongful and done in fraud of the rights of the oratrix, and if it alone, or in connection with the other acts charged resulted in a confusion of the boundary, in this respect a proper case is made out.

But it is necessary for a plaintiff to show that some of his lands in respect of which equitable relief is sought, is in the possession of the defendant. *Atty. Gen.* v. *Stephens, supra; Godfrey* v. *Littel, supra;* 4 Pom. Eq. §1385.

The oratrix here wholly fails to meet this requirement. Successive trespasses are alleged, but nothing more; and she asserts that she is in possession of her land except as trespassed upon. The fence alluded to is not alleged to include any of the oratrix's land and for aught that appears may stand on the true line, though the location of it was "arbitrarily" selected by the defendant.

Again, it is plain that the location of a lost stake can be as readily discovered in an action at law as in chancery, *Lewis* v. *Lewis,* 4 Ore. 177, and it must clearly appear that without the assistance of a court of equity the boundary cannot be established. *Miller* v. *Warmington,* 1 J. & W. 484. Said Sir Thomas Plumer, Master of the Rolls, in that case: "The bill states that there are no marks and bounds to distinguish one part [of the field] from the other; and though there may be none that are visible and apparent to the eye, yet it does not follow that, by addressing themselves to old people acquainted with the place, or by examining the tenant, they might not separate the two parts. The court would expect this to be clearly established before it would interfere." So when the boundary is so defined on the records that it cannot be affected by the fraudulent conduct of the defendant, equitable relief will be denied. *Pendry* v. *Wright,* 20 Fla. 828.

It is not necessary to approve what is said in *Miller* v. *Warmington* relative to a resort to the testimony of witnesses

to show that this bill fails to establish a necessity for equitable interference. It does not appear from the bill that the original corners of lot No. 272, some or all of them, are not standing. It does not appear that all the monuments along the north line of that lot are destroyed. It must be remembered that the ascertainment of either the north line of lot No. 272 or the south line of the Childs Lot will easily determine the location of the other. For with the aid of the description of the Childs Lot hereinbefore recited, it would then become a simple problem in surveying. Both these lines are straight lines, and the establishment of any two points in either of them would fix the location of the whole line and solve all difficulties. For aught that appears enough remain of the ancient monuments and landmarks to enable a competent surveyor to establish the bound in question.

*Decree affirmed and cause remanded with directions to the court of chancery to dismiss the bill with costs.*