INSTITUTION FOR SAVINGS IN NEWBURYPORT AND ITS VICIN-
ITY *vs.* LUTHER PUFFER & another, administrators.

Essex. November 6, 1908. — February 23, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Attachment*, Dissolution. *Executor and Administrator. Res Judicata. Equity
Jurisdiction*, Specific performance, Damages.

Pub. Sts. c. 161, § 56, substantially re-enacted in R. L. c. 167, § 112, provides that
where real estate of a debtor has been attached and he dies before it is seized on
execution " the attachment shall be dissolved, if administration of the estate of
the deceased is granted in this Commonwealth within one year after his decease,
or if application therefor is made within said year, and administration is after-
wards granted upon such application." A debtor whose real estate was at-
tached having died, the persons named as executors filed within one year after
his death a petition for the proof of his will. Also within the year a special
administrator was appointed, the decree reciting that there was delay in grant-
ing letters testamentary by reason of a contest over the probate of the will.
Four years after the death of the debtor a petition was filed in behalf of certain
creditors, alleging that the executors named in the will had neglected to proceed
with the matter of proving the will and that the entire estate would be needed
for the payment of debts, and praying for the allowance of the will. Thereupon
the will was admitted to probate, the decree reciting that it was made upon the
petition filed in behalf of certain creditors, and, the executors having refused to
serve, another person was appointed administrator with the will annexed. On
the question whether the attachments upon the real estate which were in force
at the time of the death of the debtor were dissolved under the statute above
quoted, it was contended that they were not dissolved because the appointment
of the administrator with the will annexed was made upon the petition filed in
behalf of certain creditors more than a year after the death of the debtor. *Held*,
that this contention was not sound and that the attachments were dissolved under
the statute, as, independently of the question whether the appointment of the
special administrator within the year would have satisfied the statute, the ap-
pointment of the administrator with the will annexed was granted in effect upon
the petition filed within the year by the persons named as executors, the sup-
plemental petition in behalf of certain creditors being treated as praying for
action on the petition already filed with the suggestion of a new candidate for
appointment to administer the estate.

In an action to recover damages for the alleged breach of an agreement in writing
to purchase certain real estate from the plaintiff, the defendant set up the defense
of *res judicata*, and in support of it put in evidence a decree dismissing a bill in
equity brought by the plaintiff against the defendant to enforce the specific per-
formance of the same contract. It appeared that the defendant refused to pur-
chase the real estate on the ground that the plaintiff could not convey a good
title to it. The reason for dismissing the bill in equity was not stated in the
decree itself nor in any accompanying memorandum of the judge, and did not ap-

pear of record. It was agreed that at the trial of the suit in equity the defendant argued that the title of the plaintiff, even if good, was so involved in doubt that a decree for specific performance ought not to be ordered. The title of the plaintiff was in fact good and free from incumbrances. *Held,* that it could not be assumed as matter of law that the decree of dismissal was upon the ground that the plaintiff could not give a good title, as, if the court refused equitable relief on the ground that the title was involved in doubt, it was not bound to retain jurisdiction for the purpose of passing upon the question of damages, but might in its discretion leave the plaintiff to his remedy at law in case his title was good, therefore, that the defendant had not sustained his defense of *res judicata,* and, the plaintiff's title being good, he was entitled to recover damages.

CONTRACT, against the administrators of the estate of Alvin D. Puffer, to recover damages for the alleged breach by the defendants' testator of an agreement in writing to purchase from the plaintiff certain real estate on Lancaster Street in Boston, which formerly belonged to one James Stevenson. Writ dated October 17, 1903.

The action was begun against Alvin D. Puffer during his lifetime, and after his death the defendants were admitted to defend the action as administrators of his estate. The original answer, filed on December 3, 1903, contained a general denial and an allegation of a failure of the plaintiff to have or to tender to the defendant a good title to the real estate in question. The amended answer of the present defendants, filed on November 25, 1907, added to the original answer the defense of *res judicata,* setting up as a bar to the action a decree dismissing a bill in equity filed by the plaintiff in which he sought to enforce the same contract.

At the trial in the Superior Court before *Crosby,* J., the facts appeared in evidence which are stated in the opinion. At the close of the evidence the plaintiff asked the judge to rule as follows:

1. Upon the law, the evidence and the weight of the evidence, the plaintiff's title was good at the time deed was tendered.

2. That upon the law, the evidence and the weight of the evidence, the plaintiff is entitled to recover.

3. That the burden of proof is upon the defendant to maintain his plea of *res judicata.*

4. That upon the law, the evidence and the weight thereof, the defendant has not sustained or made out his plea of *res judicata.*

5. The plaintiff is entitled as a matter of law, upon the evidence and the weight thereof, to recover at the least nominal damages, and at the most substantial damages, as shown by the evidence.

The judge refused to give the first, second, fourth and fifth rulings requested, and found for the defendants. The plaintiff alleged exceptions.

*N. N. Jones,* for the plaintiff, was stopped by the court.

*A. P. White,* for the defendants.

RUGG, J.   The plaintiff seeks to recover in an action of contract damages for the refusal of the defendants' testator to purchase real estate according to the terms of his written agreement. The plaintiff traces its title, by various mesne conveyances, from a deed of James Stevenson to William A. Hayes, duly entered for record at fifty-five minutes past four in the afternoon of December 1, 1897. Simultaneously with this deed was recorded a declaration of trust by Hayes, which recited that the several parcels of real estate included in the transfer to him were incumbered, and that Stevenson was desirous of liquidating the debts to which they were subject, and to the end that this purpose might be more expeditiously accomplished, Hayes was clothed with ample power to make repairs and generally to manage the property and to make conveyances of it. As a part of the same transaction and of the consideration for the deed from Stevenson to Hayes, the latter, simultaneously with the record of the other two instruments, executed and delivered to the Boston Five Cents Savings Bank a mortgage upon a part of the real estate for $160,000, and gave his note as trustee to that bank for the additional sum of $15,000. Hayes conveyed the estate in question to one Storer, all the owners from Storer to and including the plaintiff being *bona fide* purchasers for value. The defendants' testator refused to accept conveyance according to his contract with the plaintiff, because of liens alleged to have been created by six general attachments against the property of James Stevenson, followed by sales upon execution thereunder. These attachments were made at twenty-four minutes past four o'clock in the afternoon of December 1, 1897, and copies of the writs, with so much of the return as was required by law, were deposited in the registry of deeds two minutes later than the

deed from Stevenson to Hayes, the declaration of trust by Hayes and the mortgage by Hayes to the Boston Five Cents Savings Bank. Without discussing the question whether Hayes was himself a *bona fide* purchaser for value, and whether the plaintiff had a right to rely upon the record title as Hayes found it at the time of the conveyance to him (as to which see *Jewett* v. *Tucker,* 139 Mass. 566, 576, and *Stark* v. *Boynton,* 167 Mass. 443), it is plain that these attachments were dissolved before October 7, 1903, the date of the agreement between the plaintiff and the defendants' testator, by the death of James Stevenson and the administration proceedings upon his estate. He died on the thirteenth day of February, 1898. A petition for administration upon his estate as that of an intestate was filed on the sixth day of April, 1898, and a petition for the proof of his will was filed by those named as his executors on July 22, 1898. On the thirty-first day of October, 1898, special administration was granted to William D. Turner, the decree reciting that there was delay in granting letters testamentary under the will of the deceased by reason of a contest over the probate of his will. On February 28, 1902, a petition was filed by one Hogg, stating that he acted at the request of several creditors of the deceased; that he was informed that the persons named as executors of the will had neglected for more than three years to proceed in the matter of proving the will; that the entire estate would be needed for the payment of debts, and that the heirs at law had abandoned opposition to the will. Citation issued upon this petition, as well as upon the two preceding ones, and on the twenty-fourth day of September, 1902, the will of Stevenson was admitted to probate, and, the executors named having refused to serve, one White was appointed administrator with the will annexed. Pub. Sts. c. 161, § 56, re-enacted in R. L. c. 167, § 112, in substance provides that where real estate of a debtor has been attached, and he dies before it is seised on execution, " the attachment shall be dissolved, if administration of the estate of the deceased is granted in this Commonwealth within one year after his decease, or if application therefor is made within said year, and administration is afterwards granted upon such application." The design of this statute is to prevent interference with the orderly settlement of estates of deceased persons as provided by the statute,

and to bring all the property of a decedent into the control of his personal representatives, to be administered by them and to secure in case of insolvency an equal distribution of the assets among all the creditors according to the general policy of the law upon that subject. *Wilmarth* v. *Richmond*, 11 Cush. 463. *Dunbar* v. *Kelly*, 189 Mass. 390. *Tracy* v. *Strassel*, 191 Mass. 187. There is strong ground for the argument that the appointment of a special administrator, whose duty is to take possession of the property immediately and under authority of the Probate Court to collect the rents and preserve the real estate as well as the personal property, is such administration as is contemplated by the statute above cited. As pointed out by the plaintiff in its argument, if the rule was otherwise the purpose of the statute as to equitable distribution of the estate among creditors might be defeated, for it is conceivable that special administration may last more than a year, and, in the event of a disallowance of a will at the end of a contest lasting longer than that period, it would be necessary to file a new petition for general administration, which would not be filed therefore within one year from the death of the intestate, and thus an attaching creditor would be able to secure a preference. Without determining this question, the facts in the present case show that the administration was in effect granted upon the petition filed within one year after the death of James Stevenson. It is true that the decree of the Probate Court appointing White as administrator with the will annexed recites that it is made upon the petition of Hogg, but looked at broadly and not technically, the thing that was asked by the petition of Hogg was the allowance of the will, which had been filed with the petition of the executors appointed in the will. But for their resignation, the court might have appointed those named as executors by the testator. In substance, the subsequent petition by Hogg was a supplemental one, urging the court to take some action respecting the petitions already filed, and proffering a new candidate for appointment to administer the estate. It follows that the attachment was discharged under the statute and the title of the plaintiff was clear, on the thirteenth day of August, 1903, when its agreement with the defendants' testator was made.

The defense most relied upon is that of *res judicata*, grounded

upon the fact that the plaintiff brought a suit in equity against these defendants praying for a specific performance of the contract, for the breach of which damages at law are now sought. In that suit, after hearing, a decree was entered dismissing the bill. The reason for the dismissal is not stated in the decree itself or in any accompanying memorandum of the judge, and does not appear of record. It is agreed that at the trial of the equity cause the defendants argued that the title of the plaintiff, even if good, was so involved in doubt that a decree for specific performance ought not to be ordered, citing in support of their contention *Richmond* v. *Gray*, 3 Allen, 25, *Jeffries* v. *Jeffries*, 117 Mass. 184 at p. 187, *Hunting* v. *Damon*, 160 Mass. 441, *Loring* v. *Whitney*, 167 Mass. 550. These authorities abundantly sustain the proposition that specific performance of an agreement to purchase land will not be granted, if the title tendered is so doubtful, that it may expose the purchaser to litigation as to its validity. The defendants now assert that the sufficiency of the plaintiff's title was necessarily involved in the proceeding in equity, and contend that this point was decided adversely to the plaintiff by the decree dismissing the bill. They invoke the familiar principle that, as between the same parties, a judgment on the merits in an earlier suit is a bar, as to every issue that in fact was or in law might have been litigated, to a later suit upon the same cause of action. *Corbett* v. *Craven*, 193 Mass. 30. *Cotter* v. *Boston & Northern Street Railway*, 190 Mass. 302, and cases cited. *Northern Pacific Railway* v. *Slaght*, 205 U. S. 122.

In reason this rule can be applied only to the issues which might have been raised as matter of right by the parties thereto. It cannot in justice extend to cases where the question whether the disputed issue can be tried at all rests in the discretion of the trial tribunal. It becomes necessary, therefore, to determine whether, when, upon a suit in equity, purely equitable relief is denied on the ground that the defendant has come to a position where he cannot comply with an equitable mandate or that the plaintiff's right, although perhaps sounding in equity and well founded in law, turns out not to be of such character as to be entitled to equitable relief or that in the exercise of sound discretion it ought not to be granted or for any other reason, the

plaintiff *ex debito justitiae* may require a court of equity to retain jurisdiction for the purpose of assessing damages. If he can, he has had his day in court and is barred of an action at law. If he cannot, then he has not necessarily had an opportunity to try his case, and is entitled to such an opportunity.

It has been held, under the early as well as later chancery practice in this Commonwealth, that where peculiar equitable relief is refused, jurisdiction may be retained by the equity court for assessment of damages. *Peabody* v. *Tarbell*, 2 Cush. 226. *Andrews* v. *Brown*, 3 Cush. 130. *Pingree* v. *Coffin*, 12 Gray, 288, 305. *Attorney General* v. *Deerfield River Bridge*, 105 Mass. 1. *Milkman* v. *Ordway*, 106 Mass. 232, 257. *Wonson* v. *Fenno*, 129 Mass. 405. *Woodbury* v. *Marblehead Water Co.* 145 Mass. 509. *Brande* v. *Grace*, 154 Mass. 210. *Case* v. *Minot*, 158 Mass. 577, 589. *Lexington Print Works* v. *Canton*, 171 Mass. 414. *United Shoe Machinery Co.* v. *Holt*, 185 Mass. 97. See also *New York* v. *Pine*, 185 U. S. 93, 104. It was formerly held in England that in such case the Court of Chancery had no power to award damages, but this defect was cured by Lord Cairns's Act, 21 & 22 Vict. c. 27, § 2. *Krehl* v. *Burrell*, 7 Ch. D. 551. *Sayers* v. *Collyer*, 28 Ch. D. 103. Even in view of this statute it has been decided to be discretionary with the court whether to retain jurisdiction for this purpose or to dismiss the bill and leave the plaintiff to his remedy at law. *Durrell* v. *Pritchard*, L. R. 1 Ch. 244, 252. *Cooke* v. *Forbes*, L. R. 5 Eq. 166, 174. *Avery* v. *Griffin*, L. R. 6 Eq. 606. It has been stated frequently in respect of petitions for the removal of erections wrongfully placed on the land of a plaintiff that, if the act has been done innocently and the injury occasioned by removal would be greatly disproportionate to any gain to the plaintiff, the removal would not be ordered but the plaintiff be left to his remedy at law. *Low* v. *Innes*, 4 DeG., J. & S. 286. *Aynsley* v. *Glover*, L. R. 18 Eq. 544. *Hunter* v. *Carroll*, 64 N. H. 572. *Lynch* v. *Union Institution for Savings*, 159 Mass. 306. The cause is sometimes retained in equity for assessment of damages on the ground that there is no remedy then open at law. *Jackson* v. *Stevenson*, 156 Mass. 496, 502. It has been the general practice of this court to retain jurisdiction of the cause in equity for the purpose of assessing damages, as appears from the cases above

cited.  See also *Starkie* v. *Richmond*, 155 Mass. 188; *Methodist Episcopal Society* v. *Akers*, 167 Mass. 550; *Cobb* v. *Massachusetts Chemical Co.* 179 Mass. 423; *Rosenberg* v. *Heffernan*, 197 Mass. 151.  This is especially true where the plaintiff is himself without fault.  But this is not the universal practice.  Not infrequently instances have arisen where the court in chancery has declined to retain jurisdiction, but has left the plaintiff to seek such damages as he might be able to show by pursuing his remedy at law.    *Curran* v. *Holyoke Water Power Co.* 116 Mass. 90. *Thaxter* v. *Sprague*, 159 Mass. 397.    *Harrington* v. *McCarthy*, 169 Mass. 492, 495.    *Banaghan* v. *Malaney*, 200 Mass. 46.    The statutory authority is now ample to enable courts to permit by amendment the changing of a suit at equity into an action at law, but the allowance of such amendments is always discretionary, and is not subject to exception, although it is rarely that the affirmative exercise of such discretion is refused.    *Merrill* v. *Beckwith*, 168 Mass. 72.    *First National Bank* v. *Hall*, 170 Mass. 526.  Sometimes, when equitable relief is denied, the plaintiff is given an election to proceed for his damages in equity or by an action at law.    *Levi* v. *Worcester Consolidated Street Railway*, 193 Mass. 116.

The inference from these cases is plain that a plaintiff praying for specific performance cannot compel the chancery court to retain jurisdiction of his cause solely for the purpose of assessing damages, when for any reason other than the infirmity of his claim both at law and in equity the peculiar equitable relief sought is denied.  The plaintiff's situation at the time of filing its bill in equity was this: it had a valid contract with the defendants' testator for the purchase of land; its title appeared to be unimpeachable; on its face this entitled it to relief in equity; it brought its bill accordingly; it had no reason to anticipate an adverse decision by the court upon the documents in its hands. There is no occasion for the application of the rule that it should have stated its cause of action in different forms, because the statement of its claim for relief in damages in a form good at law did not carry with it the right to have the legal aspects of its case passed upon by a court of equity.

The defendants rely upon *Connihan* v. *Thompson*, 111 Mass. 270, where, with reference to the contention that by commenc-

ing an action at law for breach of a contract the plaintiff had waived his remedy in equity, it was said; "They are alternative remedies, but not inconsistent; and remedy in both forms might be sought in one and the same action." But it does not follow from this that redress at law in a case like the present can be compelled by a plaintiff in a court of chancery, if for any reason his right to equitable relief is denied. The title of the plaintiff is good. Hence the reasonable inference from the action of the Superior Court in dismissing the suit in equity is that it gave heed to the argument addressed to it by the defendants based upon *Richmond* v. *Gray*, 3 Allen, 25, 27, and other like cases cited by them in argument.

Without pausing to examine the correctness of this position as it is not now before us, it is enough to say that under these circumstances it cannot be assumed as matter of law that the decree of dismissal was entered upon the merits and thus deny the plaintiff a remedy to which in some form it seems to be clearly entitled. Therefore, as the equity suit might have been determined upon one ground which would, or upon another which would not, be a bar to the maintenance of this action, it is open to the plaintiff to show the precise ground upon which it went. *Corbett* v. *Craven*, 193 Mass. 30. *Waterhouse* v. *Levine*, 182 Mass. 407. *McDowell* v. *Langdon*, 3 Gray, 513. *Harlow* v. *Bartlett*, 170 Mass. 584, 591. The plaintiff should be permitted to try out its action at law, and to prove from whatever evidence may be available, including reasonable inferences, whether the decree in its equity suit was entered on the merits of the bill, or only because purely equitable relief was refused. The fact that the decree contains no reservation of right to sue at law is inconclusive. Although this is sometimes done, and may be necessary in certain cases, it is not essential in a case like the present. *Scott* v. *Rayment*, L. R. 7 Eq. 112. It follows that the plaintiff's requests for rulings, to the effect that the title was good and that the defendants had not sustained their plea of *res judicata*, should have been granted.

*Exceptions sustained.*