DOMINICK-M. SUSI *vs.* EVERETT E. DAVIS ET AL.

Somerset.     Opinion, March 19, 1935.

*Harry R. Coolidge,* for plaintiff.
*Locke, Perkins & Williamson,* for defendant.

SITTING : PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, JJ.

DUNN, J. The questions presented are raised by plaintiff on a single exception going to the exclusion of evidence, and on general motion for a new trial.

He brought trespass, alleging that, of his pulpwood, defendants "at said Burnham" carried away 110 cords, of the value of $1,122.00, "and disposed of the same to their own use, against the peace of the State." Defendants pleaded the general issue. The jury returned a verdict for defendants, without special findings.

Upon the trial, evidence tended to prove that plaintiff owned two contiguous lots of woodland, one north of the other, numbered 10 and 11, respectively, as delineated and laid down on a plan, dated 1818, of a "Gore," subdivided into twelve lots. Plaintiff's lots abut, on the east, lots 3 and 2, title to the westerly third of the former being in defendant Everett E. Davis, and ownership of lot 2 being in Ermine B. Davis, his wife.

That defendants took the wood, which had been cut by plaintiff, there was no dispute; there was in debate, in the discussion and development of the evidence, the location on the face of the earth of the line running northerly and southerly, limiting plaintiff's land eastwardly, and the defendants' westwardly.

On plaintiff's contention, that line had been definitely settled, as between himself and the defendants, by a judicial decision.

Prior to this action, the now defendants, then plaintiffs, invoked as against the present plaintiff, the exercise of equitable jurisdiction to prevent a continuing trespass in cutting and removing trees growing on their lands. A temporary injunction issued, object being to preserve the property until the rights of the parties could be determined.

The defendants in the equity suit did not demur, but answered generally. Whether the continuous severing and carrying away of trees was a proper subject for injunctive relief was not therefore open. *O'Connor* v. *Slachetka*, 237 Mass., 228, 129 N. E., 598.

The cause was heard on bill, answer, replication and proof. The issues of fact were whether defendant had unlawfully entered upon plaintiffs' lands, and cut and carried off their wood, and, if so, whether the trespasses had been persistent and frequent.

No findings, no rulings, are of record. Decree was that "the plaintiffs' bill be dismissed with costs."

To establish the grounds upon which the decree proceeded, counsel for plaintiff in the instant trespass action offered in evidence a copy of the brief prepared in advance of the equity hearing, by the attorney for his adversary, and used (whether wholly or merely in part does not appear) on the trial of that suit. The brief noted, as a first point or head:

"*The Issue*: The location on the face of the earth of the 'Gore Line,' i.e., the center line of Gardiner and Williams Gore in the Town of Burnham, which center line separates Lots 2 and 3 (owned by Davis) and Lots 10 and 11 (owned by Susi)."

In a sense, the location of the divisional line between the lots was in issue, but subordinately rather than immediately; even so, nothing goes to infer, much less manifest, that decision went upon that basis.

The record of the former proceeding, supplemented extraneously by the brief, was, on objection, excluded from the evidence. Exception was allowed.

The allegations for equitable interference were, not to determine a boundary line controversy, with regard to which a writ of entry would have afforded apt remedy, but to restrain the defendant

from a continuing trespass arising from an intrusion upon plaintiffs' realty, and the removal of growing trees therefrom; the predicate of prayer for injunction was irreparable injury to growing timber, and want of an adequate remedy at law.

The case was tried on the merits; conclusion of the equity court, as has been seen, was against the plaintiffs. The decree dismissing the bill is in full force and unreversed, but the question of the boundary line is not thereby fully adjudicated.

The decree does not, certainly or uncertainly, define any of the rights of the parties, other than that plaintiffs should no longer maintain the bill.

The fact inferably settled for the defendant was that on the proof there were no acts of trespass continuously or constantly recurring, on any part of plaintiffs' real estate, from which, unless defendant was enjoined, irremediable injury would result.

The effect of the decree was to deny permanent injunction, refuse the prayer for relief, dissolve the temporary injunction, and dismiss the bill.

A judgment is not evidence of any matter which came incidentally or collaterally in question, or may be deduced only by way of argument or construction. Certainty is an essential element, and unless it is shown that the judgment necessarily involved a determination of the fact sought to be concluded in the second suit, there will be no bar. *Freeman on Judgments*, Sec. 691; *Coke on Littleton*, 352b; *Campanella* v. *Campanella*, (Cal. App.) 265 P., 327.

True, there may be an equitable proceeding to determine confused boundaries of adjacent parcels of land.

The foundations of the jurisdiction are fraud and misconduct on the part of the defendant resulting in a confusion of the boundary, a relation between the parties making it the duty of one of them to preserve and protect the marking line, with such neglect or misconduct on the part of him on whom the duty rests as results in its confusion, or where a settlement of the boundary cannot be had at law without a multiplicity of suits. *Watkins* v. *Childs*, 80 Vt., 99, 66 A., 805.

In such instances, it is requisite that a plaintiff allege and prove that some of his land, in respect to which relief is sought, is in the possession of the defendant. 4 *Pom. Eq.*, Sec. 1385; *Watkins* v.

*Childs,* supra, and supporting cases cited. The plaintiffs averred successive trespasses; also that they were in possession of their land except as trespassed upon, and that the line dividing their parcels of land from defendant's was "clear and well known."

That suit and this action do not relate to the same thing; this is for something different from the first.

Where the second action between the same parties is on a distinct cause, the earlier judgment is conclusive, by way of estoppel, only as to facts, without the existence and proof of which it could not have been rendered. *Burlen* v. *Shannon,* 99 Mass., 200; *Hill* v. *Morse,* 61 Me., 541; *Young* v. *Pritchard,* 75 Me., 513; *Smith* v. *Brunswick,* 80 Me., 189, 13 A., 890; *Embden* v. *Lisherness,* 89 Me., 578, 36 A., 1101; *Kimball* v. *Hilton,* 92 Me., 214, 42 A., 394; *Harlow* v. *Pulsifer,* 122 Me., 472, 120 A., 621; *Lausier* v. *Lausier,* 123 Me., 530, 124 A., 582; *Edwards* v. *Seal,* 125 Me., 38, 130 A., 513. To constitute a preclusion, it must be substantiated affirmatively that, in the suit in which the judgment was entered, a right was adjudged and decided. The expression that a judgment is conclusive not only as to subject-matter, but also as to every other matter that was or might have been litigated, means that a judgment is decisive upon the issues tendered by the proceeding. *Campanella* v. *Campanella,* supra. What was said in *Corbett* v. *Craven,* 193 Mass., 30, 78 N. E., 748; *Edwards* v. *Seal,* supra, and other cases of citation in the brief for the plaintiff, of course must be read in the light of all the circumstances. The opinions lend no support to that which has been contended here.

The evidence was properly rejected. The exception must be overruled.

The plaintiff insisted ownership of the wood; insistence was based on the right of property arising from his own seizin of the premises on which it had been cut. The burden was upon him to make good that assertion by a reasonable preponderance of all the evidence.

He called and examined witnesses, including land surveyors. He introduced his own title deeds (the only deeds in evidence), and official copies of antecedent ones. The description in the deeds amounts to this, and nothing more: Lot 11, containing 87½ acres, and Lot 10, containing 85 acres, the two lots being part of the

"Gore" in Burnham, according to a survey and plan by Charles Hayden.

The map made by the surveyor was admissible in evidence as indicating the location of the survey. *Danforth* v. *Bangor*, 85 Me., 423, 27 A., 268. But at last the question of boundary was one of fact determinable by the force and character of the testimony.

Of the original location of the line separating the lots of plaintiff and defendants, there was no showing. There were no physically existing monuments; no admitted lot boundaries.

The exterior lines of the Gore, as an entirety, were unquestioned; the north-and-south line dividing plaintiff's lots from defendants', was, as drawn by the plan maker, part of the straight direction of the so-called center of the Gore.

The Gore is longer, northerly and southerly, than broad, easterly and westerly. Beginning at the southeast corner of the plan and extending northerly on the east side, the lots are designated, in regular sequence, 1 to 6; thence, beginning with 7, in the northwest corner, to and inclusive of 12.

Of the lots, two are designated of similar acreage; each of these, one being plaintiff's 11, is denoted 87½ acres. The other lots vary from 86½ acres to 255 acres. Plantiff's lot 10 is defined 85 acres; of defendants' lots, 2 is noted 97½ acres, and 3 (the whole lot) 86½ acres.

In the phrase of surveyors, there are overruns, with material excess of land. Plaintiff's lots, the stated areas of which, united, embrace 172½ acres, have, exactly measured, 34½ acres more, full inclusion being 207 acres. Defendants' lots 2 and 3 (all of 3) have, on the plan, together, 184 acres; the overplus is 44 acres; actual total, 228 acres.

Surplus essentially affects other lots; still others fall short.

The plan, the jury could have found, could not, except as to the outermost lines, be projected onto the earth.

Grantees in severalty of lots of land laid off on a particular plot hold, in proportion to their respective conveyances, where actual measurements not controlled otherwise are variant in wide departure from those given in the deeds. It must be presumed, in the absence of circumstances showing the contrary, that variance arose from an imperfect measurement of the whole piece of land.

Deficiency must be divided among the several lots proportionately to their respective content as shown by the plot. *Wyatt* v. *Savage*, 11 Me., 429. The same principle maintains where the real measurements are in excess of those specifically designated upon the plot. *Witham* v. *Cutts*, 4 Me., 31. A survey shall govern the plan. The plan is a picture, the survey the substance. The plan may be all wrong, but that does not matter if the actual survey can be shown. *Proprietors of Kennebec Purchase* v. *Tiffany*, 1 Me., 219; *Pike* v. *Dyke*, 2 Me., 213; *Brown* v. *Gay*, 3 Me., 126; *Esmond* v. *Tarbox*, 7 Me., 61; *Loring* v. *Norton*, 8 Me., 61; *Bussey* v. *Grant*, 20 Me., 281; *Williams* v. *Spaulding*, 29 Me., 112; *Whitten* v. *Hanson*, 35 Me., 435; *Bean* v. *Bachelder*, 78 Me., 184, 3 A., 279; *Stetson* v. *Adams*, 91 Me., 178, 39 A., 575; *Ilsley* v. *Kelley*, 113 Me., 497, 94 A., 939.

Construction of the deeds, and their legal effect, was a question of law; but the incidental location of the west line of plaintiff's land was a question of fact. *Abbott* v. *Abbott*, 51 Me., 575, 581.

It is to be assumed, no point to the contrary having been saved, that the trial judge properly instructed the jury concerning the law.

On motion to grant a new trial, the reviewing court will not reverse upon a question of fact if there is sufficient evidence to support the verdict, especially if it is against the party having the burden of proof, and such proof depends appreciably upon the testimony of witnesses whom the jury saw and heard.

The verdict, not being obviously wrong, must stand.

*Exception overruled.*
*Motion overruled.*