8 N.J. Super. 103 (1950)
73 A.2d 594
CARL A. BECK, SUBSTITUTED TRUSTEE, PLAINTIFF-RESPONDENT,
v.
ERNEST T. BROWN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 8, 1950.
Decided May 24, 1950.
*104 Before Judges JACOBS, DONGES and BIGELOW.
Mr. Milton Miller argued the cause for respondent (Mr. Robert J. Novins, attorney).
Mr. Franklin H. Berry argued the cause for appellant (Messrs. Berry, Whitson & Berry, attorney).
The opinion of the court was delivered by BIGELOW, J.A.D.
This is an action of ejectment in which judgment has been rendered for plaintiff. The three parties, Beck, Brown and Vogelman, own adjacent lots in Island Heights on Barnegat Bay. The chain of title of none of them was put in evidence but they stipulated instead that severally they had record title,  Vogelman to Lot 4, Beck, the plaintiff, to Lot 5, and Brown to Lot 6, in Block J, on Map of Westrays Point, filed in the County Clerk's Office in 1888. The proofs went to the question, Where are the true lines of the lots? Neither the stipulation nor the map gives any courses or distances, or shows any monuments. The map, however, is marked "Scale: 1 inch  200 feet."
The streets bounding Block J were opened and the lots in the block were laid out on the ground long ago and stone markers set at the corners of many of the lots. A dozen or more houses were built on the lots so staked, probably about 1900 or 1910, leaving only three vacant lots in the immediate vicinity of the property is dispute, namely, lots 5, 6 and 7. By applying the scale of the Westrays Point Map, it appears that these lots should have a frontage of 50 feet each, or 150 feet for the three. Lot 4, Vogelman's, is marked at its four corners, is fenced and on it are two cottages, built at least a quarter of a century ago. Next lies what was vacant land until recently, 150 feet, that we will call lots 5, 6 and 7. A surveyor, in April, 1946, noted a marker at the corner of lots 5 and 6. Between lots 7 and 8 is a stone wall, and beside the wall a cedar hedge, and at the corner a monument. The Court, accepting these long-established lines as correct, fixed *105 the northerly boundary of plaintiff's lot, No. 5, at the fence on Vogelman's southerly line, and plaintiff's southerly boundary as a line parallel therewith and 50 feet distant, and also 100 feet northerly of the wall between lots 7 and 8.
Two or three years ago, the defendant Brown, owner of lot No. 6, decided to build on his lot. He engaged a surveyor, who scaled the Westrays Point Map and so found the distance between lot No. 6 and the northerly line of the whole tract, 538 feet. He then measured that distance on the ground and so located the lines of lot No. 6. While he checked his work in sundry ways, it depends on scaling the map and disregards everything in the field except the well-monumented northerly line of the tract. All the old survey markers and all the boundary fences on Block J were, Brown's engineer found, about 30 feet too far south. Seemingly, Block J was laid out on the ground 30 feet longer than shown on the map; development began at the southerly end, and the extra length was added to two lots at the northerly rounded tip of the block. According to his conclusion, there was only a width of about 20 feet for lot 5 between lot 6 and Vogelman's fence, while there remained some 80 feet for lot 7, between lot 6 and the stone wall at lot 8.
None of the witnesses compared the distance on the ground from lot 6 to the southerly boundary of the whole tract, with the corresponding distance on the map, so we are not informed whether or not there is actually more land in the Westrays Point tract than the map shows, or whether the excess length of Block J is balanced by too narrow streets, or in some other way.
Defendant Brown accepted as correct his surveyor's report, built his house accordingly, and now finds that it straddles what the court has ascertained to be the true line between his land and plaintiff's lot.
While the construction of a deed of conveyance is a legal problem, the actual location of the plot conveyed is a question of fact. Passage v. McVeigh, 23 N.J.L. 729 (E. & A. 1852); Wilkinson v. Lyons, 87 N.J.L. 200 (E. & *106 A. 1914). The lines of streets as actually opened, fence lines and other monuments placed many years ago, before the controversy arose, whether they abut the premises in question, or are in the immediate vicinity, are persuasive factors from which may be derived the lines that are now in dispute. Louisville Cooperage Co. v. Collins, 228 Ky. 266, 14 S.W.2d 1090 (Ky. 1929); Beaubien v. Kellogg, 69 Mich. 333, 37 N.W. 691 (Mich. 1888); Susi v. Davis, 133 Me. 354, 177 A. 610, 97 A.L.R. 1222 (Me. 1935). Judge Smith accepted as correct the long-established lines of the lots in Block J. As the trier of the facts, this was well within his province.
The judgment is affirmed.