[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
The plaintiff Medway Associates (Medway) has brought this action in two counts against Raymond Shoneck (Shoneck) and "other CT Page 6012 defendants"[1] concerning certain land situated in Meriden and Wallingford.
In paragraph one of the first count of its amended complaint Medway alleges that it "is the absolute owner and in possession of certain piece or parcel of land in the towns of Meriden and Wallingford as described in Exhibit A[2] attached to the complaint. In paragraph two it alleges that it acquired title thereto by certain warranty deeds, recorded in Meriden and Wallingford. In paragraph three it alleges that Shoneck claims an estate or interest "in the lands or parts thereof" adverse to Medway's title or interest and in paragraph four it alleges that that certain defendants, i.e. Union Trust Company, Bankers Trust Company and the Connecticut Light and Power Company all claim an interest" in the land or parts there of which are not adverse to the title or interest" of Medway. (underlining added).
In the second count Medway realleges its ownership and possession of the land referred to in the first count. It goes on also to allege that from about October 1, 1987, Shoneck entered Medway's property and improperly cut and removed timber on that property until at least June 1, 1989, that through that period (at least to June 1, 1989) Shoneck also improperly started brush fires on Medway's property as that is described in its Exhibit A and that in November 1989, Shoneck either dumped or permitted others to dump or provided access for others to dump tree stumps on Medway's property.
By way of relief Medway claims:
 "1. A judgment that plaintiff, not Shoneck, is the sole owner of all the land described in Exhibit A or to the land and settling the title thereto.
 2. Damages equal to three times plaintiff's damages pursuant to Conn. Gen. Stat. 52-560.
 3. A permanent injunction enjoining Shoneck from trespassing on plaintiff's property and from harvesting its timber.
4. Attorney's fees and costs.
 5. Whatever other legal or equitable relief this court may deem appropriate."
In his answer to paragraph one of the first count Shoneck denies that the plaintiff "is the absolute owner and in possession of a portion of the land described in said paragraph [one of the CT Page 6013 amended complaint], which portion of land is more fully described on Schedule B[3] attached" [to Shoneck's answer] and "which portion" is referred to by Shoneck as the "disputed land", and "which land is further described as the Fifth Parcel in the deed attached" [to Shoneck's answer] "as Schedule A."[4] (underlining added) Shoneck's answer to the balance of paragraph one of the first goes on and says "; as the allegations relate to the remainder of the piece or parcel of land described [in paragraph one of Medway's first count], this defendant [Shoneck] lacks sufficient information to form a belief and leaves the plaintiff to its proof thereof."
As to paragraph 2 of the amended complaint, Shoneck denies all its allegations "as the same relate to the `disputed land', and insofar as its allegations" relate to the remainder of the piece or parcel and land described in Schedule A," Shoneck pleads insufficient information to form a belief and leaves the plaintiff to its proof.
Shoneck answers paragraph 3 of the amended complaint by admitting its allegations insofar as they related to the "disputed land." As to paragraph 4 Shoneck pleads insufficient information to form a belief and leaves the plaintiff to its proof.
In answering the first two paragraphs of the second count of the amended complaint Shoneck incorporates his answer to the first two paragraphs of the first count and denies all the remaining paragraphs of that count.
Shoneck also sets up a special defense of adverse possession[5] claiming title under that doctrine to that portion of the premises described in Medway's amended complaint which portion Shoneck's special defense alleges is ". . . more particularly described in Schedule B attached [to his answer]. . . ." Medway's reply denies this special defense.
In addition, Shoneck has also filed a counterclaim in two counts. In the first count, Shoneck alleges in its first paragraph that he is the absolute owner and in possession of a certain piece of land in the towns of Meriden and Wallingford being more particularly bounded and described in his Schedule B "attached hereto." In the second paragraph he alleges that he "acquired his title by Quit Claim Deed from the Meriden National Bank, which deed is dated July 16, 1940, and recorded in Volume 284 at page 220 of the Wallingford Land Records and in Volume 256 at Page 130 of the Meriden Land Records". Medway's answer denies both these allegations. The final paragraph of the first count is that ". . . Medway Associates and the defendants Union Trust Company, Banker's Trust Company and the Connecticut Light and Power Company, claim or may claim estates or interests in the land CT Page 6014 or parts thereof which are or may be adverse to the title thereof of [Shoneck]." Medway's answer admits this allegation.
For the second count of his counterclaim Shoneck repeats the allegations of his special defenses of adverse possession and Medway's answer denies this Second Count.
Medway has moved for summary judgment as to the first count of Shoneck's counterclaim claiming record ownership of the disputed property it maintains is depicted in its Exhibit 1 (Boyce map) which is a 1947 map so moving "on the grounds that there are no genuine issues as to any material fact with respect to any claim set forth in those pleadings." It maintains as the basis for its motion that the deeds, wills and other documents recorded in the land records of the towns of Meriden and Wallingford clearly establish as a matter of law that Medway is the record owner of the property depicted on the Boyce map in its Exhibit 1. It, therefore, seeks summary judgment as to the first count of Shoneck's counterclaim declaring it to be the record owner of the disputed land which it says is depicted on the Boyce map.
It is helpful, as it should be from time to time in this opinion, to point out seasonably circumstances that play into certain aspects of this complicated matter. As will be more detailed later, Medway has submitted a mass of materials in support of its motion which come to about some 42 exhibits. These include maps, deeds, requests for admissions and answers thereto, probate and foreclosure certificates, depositions, surveys, an affidavit and a title chart.[6] In opposition, Shoneck has filed maps, deeds assessors' records, title standards and his affidavit.
The record of the proceedings before this court including transcript, disclose that counsel for Medway and Shoneck have joined in representing, as well as conceding that the "disputed land" (which Shoneck claims he owns as does Medway) is included within the much larger piece of land lying in Meriden and Wallingford as that much larger piece is more fully described in the approximately 27-1/2 page typewritten description attached to Medway's amended complaint as Exhibit A. Therefore, while the pleadings themselves may not precisely delineate the "disputed land" (see e.g. Shoneck answer to paragraph 1 and 2 of Medway's amended complaint, Shoneck's special defense to Medway's amended complaint; see also paragraph 1 of Shoneck's counterclaim), this court considers the parcel of land in Meriden and Wallingford to which Shoneck claims title, insofar as the pleadings are concerned, is included within the much larger parcel of land in Meriden and Wallingford as described in Exhibit A attached to Medway's amended complaint. Moreover, the record also demonstrates that counsel for Medway and Shoneck represented that the disputed land to which Medway claims record title is that CT Page 6015 depicted on the Boyce map, that the land Shoneck claims record title is depicted on the Johnson and Soroka maps and that the "disputed land" is also shown on Medway's as parcels A and B on its Exhibit 2[7] which is actually a sketch, admittedly not to scale which sketch depicts parcels captioned "A", "B", "C", "D", "E", "F", "G" and "H". Medway admits that Shoneck owns parcels "C", "D", "E", "F" and most of "H" on Exhibit 2 and there is nothing to prove the contrary. Moreover, counsel for Medway and Shoneck appear to agree that parcel "G" on Exhibit 2 is not directly involved in this dispute. In sum, at this point, the "disputed land" in Meriden and Wallingford to which Medway and Shoneck each claim record title is encompassed within the much larger parcel described on Exhibit A attached to Medway's amended complaint. In addition, Medway claims this "disputed land" is also depicted on the Boyce map and Shoneck claims this same disputed land is depicted on the Johnson and Sorka maps, that land is also depicted as Parcels A and B on the sketch in Exhibit 2. The Boyce map, which is Medway's Exhibit 1, is dated as made in December 1947 and it was recorded thereafter, Shoneck has also attached three maps to his materials on summary judging claiming they support his claim of record title to the disputed property.
Medway and Shoneck have filed a number of memoranda on this motion. Medway, contending that it has record little to the disputed land has traced its history back to one Lyman Francis in 1872 whom Medway and Shoneck agree was their "common grantor". The Medway memoranda set out a detailed analysis of what it claims the land records reveal as to the subsequent two chains of title, one to Medway and one to Shoneck as to why it and not Shoneck is the record title holder of the disputed land. Medway further claims that Shoneck's claim that he has record title showing that he is the record owner is flawed.
In answering these claims of Medway, Shoneck maintains that summary judgment must be denied because genuine issues of material fact exist. In so doing, he refers to his three survey maps which he argues support his claim of record ownership of the disputed land. Two of these surveys were made by one Johnson. The first such map was made on October 1966 and revised on November 9, 1979. The second such map, was made on November 23, 1979. The third map, i.e. the Soroka map, was made on January 4, 1985. In addition, he cites Standard of Title No. 2 of Connecticut Standards of Title of the Connecticut Bar Association ("Standards of Title) which is entitled "Requisites of a Marketable Record Title". In doing so, he contends that under that standard which includes the criteria for such a title under General Statutes 47-33c
that he has a "root of title" to the disputed land from 1940 by virtue of a Quit Claim deed from the Meriden National Bank to him. Shoneck refers to the Johnson maps as well as the Soroka map in claiming that each further supports his position as to CT Page 6016 ownership of the disputed land. He takes issue with Medway that the Boyce map supports Medway's claims. In his affidavit Shoneck states that prior to buying the property from the Meriden National Bank (in the 1940 "root of title" deed) he inspected [the] property "and walked its perimeter with a representative of said bank who showed me a map of said property. . . . [That] property included the disputed property (and additional adjoining property) as depicted on [Medway's] Exhibit 1, with several hundred feet of frontage on Thorpe Avenue in the Town of Wallingford," Shoneck also claims that the acreage for which he is assessed in Wallingford also supports his claim to the disputed property. Parenthetically, Medway does not dispute the claim, that Shoneck has a "root of title". Shoneck further claims that there are "inaccuracies or inconsistencies in the facts and conclusions" set out in certain parts of Medway's brief concerning claims Medway makes as to certain deeds as well to the Wallingford assessors' records.
Medway's subsequent briefs not only reiterate that the deeds of record in both Meriden and Wallingford establish as a matter of law their record ownership of the disputed property, but that Shoneck's arguments that there are genuine issues of a material fact is not correct. It argues that Shoneck's claims on the survey maps of Johnson and Soroka are deficient for several reasons to be developed below including the fact that each of these three maps contains a notation by the surveyor which essentially states that all boundaries shown thereon are as they are claimed to be by Shoneck.
Turning to the "root of title"[8] claim under the Marketable record Title Act ("MRTA") Medway maintains that, while there is no dispute that Shoneck in fact owns property in both Meriden and Wallingford, that a "root of title" can be valid only as to the property described therein. Medway continues and says that the property description in Shoneck's "root of title" just does not encompass the disputed property but rather can be interpreted consistently with Medway's root of title and all earlier deeds.
In any event, Medway questions the applicability of the MRTA to the circumstances of this case. Although not specifically so claimed by Shoneck, Medway urges that presumably Shoneck's argument here is that because he has a "root of title" which he says includes the disputed land that any claim of Medway to that land is therefore extinguished by the operation of the MRTA. Medway argues that Shoneck's "roots of title" does not give him legal title because Medway itself also has "roots of title" (referring to a number of deeds). Medway, on this branch of the matter, then says that if Shoneck's claim of the operation of the MRTA was correct, then Medway, also claiming a "Root of Title" could argue that the MRTA extinguishes Shoneck's claim as well. CT Page 6017 This would be, according to Medway, "an absurd application" of the MRTA. Consequently, Medway, referring to a Michigan case, i.e. Murray v. Baikema, 54 Mich. App. 382, 221 N.W.2d 193 (1947), claims that as in Murray, our review is not to be limited to reviewing the deeds in the forty year root of title span under the MRTA. Rather it argues that this court, as did Murray, should examine the deeds in both (Medway's and Shoneck's) chains of title back to the "common grantor" (Lyman Francis) and thus resolve "the perceived ambiguity" in descriptions in the documents in both claims. By way of further claim, Medway contends that Shoneck's interpretations of certain boundaries is inconsistent with prior record ownership of various lots in the chains. It also claims that the alleged inconsistencies identified by Shoneck do not create a genuine issue of material fact and also that certain deposition testimony of the Wallingford assessor does not at all justify Shoneck's citation of those records on the acreage he claims he owns of record in Wallingford.
Before determining the applicability of the MRTA, it is appropriate to set out certain principles concerning summary judgment which will be supplemented as occasion requires. Under our rules of practice a party may move for summary judgment once the pleadings are closed between the motion. Practice Book 379.[9]
Our rules are applicable to counterclaims so that any party may move for summary judgment thereon as if it were an independent action. United Oil Co. v. Urban Redevelopment Corporation,158 Conn. 364, 376 (1979); Cummings Lochwood v. Gray, 26 Conn. App. 293,299 (1991). A motion for summary judgment should be supported and opposed by affidavits and other available documentary proof. Practice Book 381." "The party moving for summary judgment `"has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law."' D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434, 429 A.2d 908 (1980). Because the burden of proof is on the moving party, the facts presented must be viewed in the light most favorable to the party opposing the motion. Evans Products Co. v. Clinton Building Supply, Inc.,174 Conn. 512, 516, 391 A.2d 157 (1978)." Mingachos v. CBS, Inc.,196 Conn. 91, 111, 491 A.2d 368 (1985). "The movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. D.H.R. Construction Co. v. Donnelly, [supra]; Yanow v. Teal Industries, Inc., 178 Conn. 262, 268, 422 A.2d 311 (1979); Dougherty v. Graham, 161 Conn. 248, 250, 287 A.2d 382 (1971). . . ." State v. Goggin, 208 Conn. 606, 615-616 (1988).
"A `genuine' issue has been variously described as a `triable', `substantial' or `real' issue of fact . . . and has been defined as one which can be maintained by substantial evidence. . . . CT Page 6018 Hence, the `genuine issue' aspect of summary judgment procedure requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred. . . . A `material fact has been defined adequately and simply as a fact which will make a difference in the result of the case. . . . `Issue of Fact' encompasses not only evidentiary facts in issue but also questions as to how the trial would characterize such evidentiary facts and what inferences and conclusions it would draw from them." (Citations omitted.) United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364, 378-79,260 A.2d 596 (1969)." Craftsman Inc. v. Young, 18 Conn. App. 463, 465
(1989). "The test is whether a party would be entitled to a directed verdict on the same facts. United Oil Co. v. Urban Redevelopment Commission, [158 Conn. 364, 380, 260 A.2d 5961969)]." Batick v. Seymour, 186 Conn. 632, 647, 443 A.2d 471
(1982). "Once the moving party has presented evidence in support of the motion, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. Bartha v. Waterbury House Wrecking Co., [190 Conn. 8, 11-12, 459 A.2d 115
(1983)]; Farrell v. Farrell, 182 Conn. 34, 38, 438 A.2d 415
(1980); Rusco Industries, Inc. v. Hartford Housing Authority,168 Conn. 1, 5, 357 A.2d 484 (1975). It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. `Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book 380'. Bartha v. Waterbury House Wrecking Co., supra, 12" Burns v. Hartford Hospital, 192 Conn. 451, 455, 472 A.2d 1257
(1984). To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts in accordance with Practice Book 380 and 381, which contradict those stated in the movant's affidavits and documents. Farrell v. Farrell, supra, 39-40." State v. Goggin, supra 616-617.
"Once the moving party has filed the appropriate documents, the party opposing the motion `must substantiate its adverse claims by showing there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue [citations omitted]. Cummings v. Lockwood v. Gray, supra 297, see Strada v. Connecticut Newspapers, Inc., 193 Conn. 313,317 (1984).
We turn to the applicability of the MRTA to this matter. Counsel for both Medway and Shoneck agree that each of them have a "root of title" in this case. The court also agrees.
Medway and Shoneck, however, do not seem to agree as to the import of that on the instant motion for summary judgment. In brief, Medway claims, inter alia, that because the MRTA does not CT Page 6019 apply, the issue of record title depends upon the construction and interpretation of land descriptions in the various deeds and the other undisputed evidence and that there are no disputed issues of material fact, and that, accordingly, their motion for summary judgment should be granted. On the other hand, Shoneck claims that there are genuine issues of material facts as to the record title of the disputed property which must be resolved by a fact finder and, accordingly, summary judgment should be denied. In this regard, he appears to argue that, because both Medway and Shoneck have marketable record titles to two parcels of land that "the only remaining factual problem to be resolved is the location — the division line between the two marketable titles."
In resolving this difference it is first pointed that while the parties appear to cast the issue in terms of the mere location of a boundary between the two, it is not, in our view, analytically a boundary line dispute. Rather the parties here are talking about, and, it is submitted their essential claims bear out, as does the oral argument that both Medway and Shoneck claim record title to the "disputed land", as that has been referenced above. Each party also own land adjoining Parcels A and B. It is not really the question of setting the boundary line between other parcels to which each may have the record title to but, rather it is the matter of deciding who has the record title to the that acreage called the "disputed land" said to be encompassed in parcels A and B which whole is also said to be depicted on the various maps. Without becoming semantical, it is submitted that that is not a boundary line dispute as this court perceives that but it is a dispute as to whether Medway or Shoneck have record title to this land which in gross admittedly involves a number of acres of land situated in both Meriden and Wallingford. It is concluded, after analysis that this is the theory upon which this motion rested and upon which Medway and Shoneck actually briefed and argued the summary judgment motion.
The Connecticut MRTA was patterned upon the Model Marketable Title Act drafted in connection with the Michigan Research Project for the improvement of conveyancing. See Bayse Clearing Land Titles (2d. ed. 1970) 189, pp. 457-458. The purpose of marketable title acts, briefly, has been said generally to be to simplify and facilitate land title transactions by allowing persons to rely on a record chain of title, see e.g. Exchange National Bank of Chicago v. Lawndale National Bank of Chicago,243 N.E. 193, 195-196 (Ill. 1968). Professor Bayse says "The ultimate purpose of all the Marketable Title Acts is to simplify land title transactions through making it possible to determine marketability by limited title searches over some reasonable period of the immediate past and thus avoid the necessity of examining the record back into distant times for each new transaction." Bayse, op. cit., 172, p. 363. CT Page 6020
An examination of our Marketable Record Title Act as well as the consideration of its purpose causes this court to conclude that the operation of this act contemplates but one title and one root of title and the effect of that statute upon that single title and is not applicable to resolve a contest between two competing chains[10] of title as is presented here with each party claiming a root of title. Other courts have so decided under their MRTAs. See e.g. Holland v. Hattaway, 438 So.2d 456, 468
(FLA. 1983); Exchange National Bank of Chicago v. Laundale National Bank of Chicago, supra 195-196. Minnich v. Guernsey Sav. Loan Assn., 521 N.E.2d 489, 492 (Ohio App. 1987).
Having determined that the MRTA is not applicable in this case and that we must next construe the deeds in the two chains of title, we may appropriately set out certain legal principles relevant in that inquiry. We are concerned here only with who has record title not title by adverse possession as is alleged in the second count of Shoneck's counterclaim. In the final analysis, whether possession is adverse is a question of fact. Roche v. Fairfield, 186 Conn. 490, 498 (1982). Shoneck claims that here genuine issues of material fact present require denial of Medway's motion on the record title issue. We think not.
The question of whether deeds and other written instruments establish record title is a question of law for the court. See Mizla v. DiPalo, 183 Conn. 54, 63 n. 8 (1981); Merwin v. Moris,71 Conn. 555 (1899). The construction of a deed, i.e. what is its legal effect is presents a question of law for the court. See Mad River Company v. Pracney, 100 Conn. 466, 473 (1924); Beck v. Brown, 73 A.2d 594, 595 (N.Y.App. 1950), 26 C.G.S. Deeds 96h. Whether a deed itself is ambiguous presents a question of law. Simply saying a deed is ambiguous does not make it so. See Cole v. Ross Cool Company, 150 F. Sup. 808, 811 (S.D.W.A. 1987). Instruments such as deeds or contracts are not rendered ambiguous just because the parties cannot agree upon the construction to be given to them. Id. A mere misdescription in one particular in a deed where enough remains to make it reasonably certain what was intended to be conveyed will not defeat the deed. See Sherwood v. Whiting, 54 Conn. 330, 336 (1887); 6 Thompson, Real Property, 3031, p. 493 n. 95. In construing a description in a deed, effect is to be given to all parts of the description insofar as practicable. See Nichols v. Turney, 15 Conn. 101 (1842). Not only should the entire description be considered in determining the identity of the land conveyed but the entire deed itself is to be considered. 26 C.J.S. Deeds 100c.
As to boundaries, there is substantial authority for the proposition that what are the described boundaries of the land conveyed is a question of law while the question where those CT Page 6021 described boundaries may be found on the face of the earth is a question of fact. See e.g. Waldman v. Town of Barrington,227 A.2d 592, 595 (R.I. 1967). Bailey v. Look, 432 A.2d 1271, 1274
(Me. 1981); Pennsylvania Game Commission v. Keoun, 471 A.2d 937,939 (Pa.Commw. 1984); Beck v. Brown, supra; Combs v. Woodie,281 S.E.2d 705, 706 (N.C.App. 1981). The construction of a deed and its legal effects as to boundaries is a question of law. "The construction of a deed in order to ascertain the intent expressed in the deed presents a question of law and requires consideration of all its relevant provisions in the light of the surrounding circumstances. Taylor v. Denneey, 136 Conn. 398, 402, 71 A.2d 596
(1950)." Carbone v. Vigliotti, 222 Conn. 216, 222 (1992). Mitchell v. Moore, 13 So.2d 314 (Florida 1943) Pacheco v. Martinez, 636 P.2d 308, 315 (N.M.App. 1981).
In oral argument on Medway's summary judgment motion before this court both counsel referred, inter alia, to the title chart referred to above prepared by Heidi Maresh for Medway setting out all the documents of record Medway claims to be involved in this controversy. This title chart was attached to an affidavit attached to Medway's motion and is claimed to represent the Medway and Shoneck chains of title beginning with one Lyman Francis who both agree is the common source of their titles. At that time counsel also referred to a sketch of the parcels ("parcel sketch") made by Medway's title searcher Maresh and included in its summary judgment materials (as Exhibit 2). This parcel sketch showed parcels lettered "A" through "H" that were involved in the issues raised on summary judgment. Medway presented this parcel sketch to demonstrate its claim that the documents on the title chart (as well as other materials attached to its motion) supported its motion. In oral agreement Medway's presentation included relating the lettered parcels shown on the parcel sketch to documents referred to on its title chart. The disputed land is referred to on the parcel sketch as parcels A and B.[11] Blowups of both the title chart and the parcel sketch were used during oral argument of counsel. Shoneck does not claim that any document, particularly any deed that is involved in either chain of title from the common source of both chains, i.e. Lyman Francis in 1872, does not appear on the title chart.
It is neither necessary or practical for this court to chronicle in this memorandum, in the nature of an abstract of title, all the documents appearing of record, which touch the record title at issue on this motion. This need not be done for several reasons. There are no new substantive issues that have not already been briefed before oral argument. The court has examined at length all the documents submitted by both Medway and Shoneck. The court has already ruled that the MRTA is not applicable in the circumstances of this case because Medway and Shoneck each have a "root of title". Shoneck, as noted, does not CT Page 6022 claim any documents of record have been omitted from Medway's materials submitted on its motion. Significantly, in his opposition brief, the only deeds of record the construction of which Shoneck singles out for attack, as suggesting triable issues of fact, are deeds very early in time as will be developed below including its claimed effect upon his "root of title" documentation.
Initially, Medway admits that Shoneck owns parcels C, D, E, F and most of H as depicted on the parcel sketch. Parcel G (the Thorpe parcel) on that sketch is not claimed to be owned by either Medway or Shoneck. That leaves Parcels A and B which are in dispute. Parcel B and C together comprise about ten acres and each lie partly in Meriden and partly in Wallingford. As one looks at the parcel sketch it can be visualized that Parcel C is situated just easterly of Parcel G (which itself bounds westerly on highway), southerly of Parcel D, easterly of Parcel B and northerly of a portion of Parcel A. Parcel B is easterly of Parcel C, southerly of portions of Parcels D and F, easterly of a portion of Parcel E and northerly of a portion of Parcel A.
Before addressing the specific claims raised in Shoneck's briefs it is helpful to refer to certain documents in this complex matter. Not every such document will be set out but rather those deemed important to the inquiry on this summary judgment motion.
Parcels B and C, contiguous as they are and with each lying party in Meriden and partly in Wallingford are helpful in construing the recorded documents. Both parcels, as well as all the land involved on this motion, came out of the 70 acres William J. Ives acquired from Mary and Lucretia Francis in 1872.
It is significant to note that when William Ives received this 1872 deed, which encompassed all the land involved in this case, that it specifically recited that the 70 acres were "mostly in Meriden" and "partly (about six to seven acres of south part) in . . . Wallingford." Medway maintains that the six to seven acres in Wallingford is Lot B. As will be seen legal construction of the materials, including deeds submitted concerning this summary judgment establishes this claim.
The Francis to Ives 1872 deed specifically described the land as ". . . one certain tract containing in quantity seventy acres, more or less, situated mostly in . . . Meriden and partly in . . . Wallingford (about six to seven acres of south part) in . . . Wallingford. . . ." The entire 70 acres bounded North on highway and land of Michael Fleming; East on highway and land of said Mary Francis; South on land of said Mary Francis, George B. Francis and said Lucretia E. Francis and westerly highway." CT Page 6023
Shortly thereafter, William Ives sold to Michael Fleming a 15 acre more or less piece in Meriden which is Parcel D. Ives, then sold Parcels B and C, which together comprised 10 acres, to George B. Francis by deed dated April 4, 1872. This 10 acre deed recited that it conveyed ". . . one certain lot of land situated partly (about four acres) in . . . Meriden and partly (about six acres) in . . . Wallingford, the whole containing in quantity ten acres more or less. . . ." It was bounded north and west on "my own land" (William Ives) and land of Michael Fleming, on the east "on my own land" (William Ives) and land of Mrs. Mary Francis and south on land of George B. Francis. The six acre portion is Parcel B which is part of the disputed land and the four acre portion is parcel C which a construction of the deeds demonstrates that George B. Francis later conveyed to Fleming in 1878, who, in turn, construing the deeds, was Shoneck's predecessor in title as to that portion. This 1878 deed (which is of Parcel C) recited that it contained four acres more or less and was situated "partly in Meriden and partly in Wallingford" was bounded "Northerly land of Rose Fleming [the wife of Michael Fleming who inherited it on his death and which is Parcel D], East in my own land [that is Parcel B which George B. Francis retained where he conveyed Parcel C by this deed], South on my own land [George B. Francis] and land of Lucretia E. Francis [which would be Parcel A] and "Westerly land of George Thorpe" [this is the 16 acre Thorpe piece which is Parcel G which William Ives had earlier conveyed to George W. Thorpe in 1873]. The construction of this deed not only demonstrates that the land therein described is partly in Meriden and partly in Wallingford but it also recognizes George B. Francis' ownership of Parcel B on the east and the Francis ownership on the south. The bounds on the north and west, on Fleming and Thorpe respectively, also anchors the location of Parcel C.
It is at about this time that John Douglas, whom the record demonstrates was the predecessor in title to that land which Shoneck now owns of record began acquiring in three transactions all the land he ever acquired in this case. In 1877 Alice Crocker deeded Douglas land containing 16 acres more or less which is Parcel E. That land was bounded east on a highway (which is High Hill Road), north on land of William J. Ives (this is Parcel F which Ives still owned and which he deeded to John Douglass two years later in 1879), west on land of Lyman Francis and south on land of Alexander Hall and the heirs of Lyman Francis.
Two years later in 1879 William J. Ives conveyed to John Douglass land containing thirty acres more or less which is Parcel F. That land was bounded north on land of Michael or Rosa Fleming, East by an old highway (High Hill Road), South partly by land of John Douglass (this is Parcel E which Douglass acquired on 1877) and "partly by land now or formerly of George Francis (this CT Page 6024 is Parcel B)" and west by land "of Michael or Rosa Fleming the highway". This deed also contained the recital ". . . being land conveyed to me by heirs of Lyman Francis deceased." This 1879 deed recognizes George B. Francis ownership of so much of Parcel B as abuts Parcel F.
Some years later in 1906, James J. Fleming conveyed three pieces of land to John Douglass by one deed. The first and second pieces were in Meriden and the third piece was "situated partly in Meriden and partly in Wallingford." The first piece (which is Parcel D) was bounded north on highway: easterly land of John Douglass (Parcel F which Douglass acquired in 1879) and George L. Francis (which is Parcel B), south on land of James Fleming (Parcel C) and west on land of George Thorpe (Parcel G). The second piece (which is Parcel H) is bounded north, east and west on highway and south on land of John Douglass (Parcel F which Douglass acquired in 1879). The third piece (which is Parcel C) is bounded north on land of Rosa Fleming (Parcel D), East on land of George Francis (Parcel B), south on land of George B. and Lucretia Francis (Parcel A) and west on land of George Thorpe (Parcel G).
We note that, as to the first piece, there is only one south bound and that is on James Fleming (Parcel C) and there is no reference to George B Francis on the south (Parcel C). We also note that as to the third piece in this very same 1906 deed which is Parcel C that its east bound is on George B. Francis this recognizing his ownership of Parcel B. This is not the only deed that has recognized the George Francis ownership of lot C but in this 1906 deed where we consider the entire deed in construing it we refer to this east bound of third piece. In addition, we also point out that nothing in this deed or in any document upon which Shoneck depends for his claim of ownership of Parcel A shows any west bound on a highway vis a vis the George Thorpe land (Parcel G). that creates any genuine issue of material fact. In other words, the west bound of the first piece in this deed from Fleming is "on land of George Thorp"; there is no bound north on land George Thorpe that would justify any record title claim by Shoneck of a bound on the west by a highway in Shoneck (southerly of the land of George Thorpe), to support Shoneck's present claim to Parcel A in creating any genuine issue of material fact This contributes to our determination that this is so as a matter of law and not fact.
Shoneck does not claim, it is again noted, that any document has been omitted by Medway in presenting its analysis of its claim of entitlement to summary judgment on the record title issue. Consistent with its burden on this motion, Medway has shown that Shoneck's record title to land involved his land comes through John Douglass and no one else. The legal construction of the CT Page 6025 documents show this. When John Douglass died the distribution of his decedent estate set out to Rose Kennedy, his daughter, certain land ". . . situated partly in Meriden and partly in Wallingford, containing in quantity fifty acres, more or less, and bounded as follows: North by highway; East by an old highway; South by land now or formerly of George B. Francis and West partly by land of George W. Thorpe and highway." It is to be kept in mind that at his death John Douglas owned, inter alia, Parcels F and H, both of which had west bounds on a highway.
Medway maintains that this includes everything John Douglass owned in this area at his death and that would be Parcels C, D, E, F and H. We note two things at this juncture. First, the documents that ultimately result in Shoneck's record title of the land he owns emanating from Douglass carries forth the same description (as in the probate distribution from Douglass' estate) through the 1940 quit claim to him from the Meriden National Bank. Second, we note, that the documents of record demonstrate there were no record transactions of any kind between Medway's predecessors in title and Shoneck's predecessors in title since 1906. Therefore, whatever John Douglass had at his death was all the land that could ultimately have come to Shoneck insofar as his record title is concerned. Thus, Shoneck can have record title to no more land than John Douglass had.
We further examine an argument stressed by Shoneck at the hearing before this court. As already indicated, it is Medway's position that Shoneck does not own either Parcel A or Parcel B. Included in its position is the claim that because John Douglass, Shoneck's predecessor, never owned of record either of those parcels Shoneck could not because he cannot have record title to anything John Douglass did not. In addition, Medway disagrees with Shoneck's analysis that he (Shoneck) acquired record title to Parcel A and Parcel B by virtue of acquiring title to the fifth piece in 1940 the quitclaim deed from the Meriden National Bank to him. That fifth piece was bounded in that 1940 deed as follows: "North by highway; East by an old highway; South by land of George B. Francis and West partly by land of George W. Thorpe and by a highway."
Shoneck says that this piece describes all of the parcels on the parcel sketch except Parcel G (the Thorpe parcel) and would thus encompass Parcels A, B, C, D, E and F. Within that description in the 1940 deed, Shoneck claims is the land depicted in his exhibit 1 (which is the 1979 Johnson map) which he maintains is the survey of Parcels A and Parcel B. He first contends that the west bound in his 1940 deed, i.e. "west party by land of George W. Thorpe and a highway" is to be interpreted as being west on the land of George W. Thorpe and the "a highway" portion may be interpreted as including not only Fleming Road CT Page 6026 (which he said was "in the northerly portion of the [Thorpe] parcel") but also refers "to a second westerly bound on Thorpe Avenue" which he claims is the West Bound of Parcel A. His second position here is a variation on his first. In that he argues that the "north by a highway bound in his 1940 deed" could have been referred "to as the highway "we now know as Fleming Road" and that part of the west bound referred to as "by a highway", he argues "could have been referring to this sketch being Thorpe Avenue now a days", and as such "would incorporate the disputed piece, the disputed piece being a combination of A and B. So, he concludes, that "our acquisition deed [of 1940] lends itself to two interpretations." Shoneck adds that the south bound in his 1940 of "south by land of George B. Francis" really refers to the southbound of Parcel A.
The construction of the deeds does not, as a matter of law, support Shoneck's claim. To begin with John Douglass, as the record demonstrates, never had record title to Parcel A and/or Parcel B. Shoneck, in opposing Medway's claim to record title of these parcels does not at all create any cognizable construction of the relevant deeds on the record that discloses that he or any predecessor of his, including Douglas ever got record title of either Parcel A or Parcel B. Shoneck claims that his variations on his "west by a highway" bound in his 1940 deed give him a west bound on Thorpe Avenue South of the Thorpe land (Parcel G). However, that deed and for that matter, none of those of his predecessors have a north bound on the Thorpe land to be consistent with his claim to a west bound on a highway southerly of the Thorpe piece (Parcel G). Shoneck just argues that his 1940 deed's south bound on George B. Francis is "ambiguous" and he does this without support in the record from a legal construction of the deeds.
Where the terms of a deed are clear and uncertain as they are here, then resort to rules of construction to instruments unclear as to meaning is not to be had and ambiguity in a conveyance does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it "genuinely uncertain" which of two or more meanings is the proper meaning. See Brungardt v. Smith, 290 P.2d 1039, 1044 (Kan. 1955); see also Union Pacific Land Resources Corporation v. Park Tower Ltd.,321 N.W.2d 440, 443-444 (Neb. 1982); See Connecticut Bar Association Standard of Title 10.1 infra. There is no such ambiguity here from a construction of the 1940 deed by which Shoneck acquired title. Saying the south bound on George Francis is ambiguous is resolved by Shoneck, without support by the record, by saying that really means that the south bound on Francis is the South bound of Parcel A. He argues this is so despite our construction of deeds that shows no record support for that position. In making this argument we note that Shoneck does not mention that the east bound CT Page 6027 in the same 1940 deed is an old highway (which is High Hill Road); that is left unexplained because the east bound of Parcel A is partly on land of John Douglass and partly on land of another unnamed owner but certainly none of the east bound of Parcel A of record is on a highway. The legal construction of deeds on the record clearly shows this.
Shoneck also contends, in support of his claim to Parcel A (and Parcel B) that the west bound in his 1940 deed of "west partly by land of George W. Thorpe and a highway "also may mean west by the highway known as Fleming Road, by the land of George W. Thorpe and by that portion of Thorpe Avenue that is directly southerly of the southerly end of the westerly bound of the Thorpe parcel (Parcel G) on Thorpe Avenue. In other words, looking at the parcel sketch and going from north to south, Shoneck would say his west bound in the 1940 deed would the highway known as Fleming Road, then proceeding southerly along the land of George W. Thorpe (Parcel G) and then, further proceeding southerly the highway known as Thorpe Avenue. This contention, if, sound, would then give Shoneck the west bound of Parcel A on Thorpe Avenue. The legal construction of the deeds do not permit any such construction. Moreover, in suggesting such a construction, Shoneck cites no rule of construction in any Decision or Standard of Title, that taken with the construction of the deeds bearing upon such a claim that who support this argument and create a genuine issue of material fact.
It also bears pointing out that, at his deposition, Shoneck, who said that George Francis inherited property from his father Lyman Francis, also said that any property George Francis inherited from his father did not belong to him (Shoneck). In this connection, with reference to Shoneck's claim to Lot A we note the probate certificate of distribution from the Estate of George B. Francis in 1911. While such a certificate may not be a muniment of title, see Cardillo v. Cardillo, 27 Conn. App. 208,212 (1992), it is "a guide or pointer for clarification of the record". That certificate distributed to Emily J. Francis and Clayton H. Francis, predecessors of Medway as to Parcel A and Parcel B, certain real estate situated partly in Wallingford and partly in Meriden including the third piece in that certificate. That third piece, which construction indicates, encompassed Parcel A and Parcel B not only bounds north on land of George W. Thorpe (Parcel G) and John Douglass (Parcels C, D and F) and east on land of John Douglas (Parcel E), Theo. Harman and formerly of Amos Ives (that portion of Parcel A, southerly of Parcel E) but also south by land formerly of Ives (which Shoneck now claims is really his south bound in George B. Francis in his 1940 deed). Shoneck's materials offer no legal construction based on the record which creates any genuine issue of material fact on this aspect. CT Page 6028
Finally, in this 1911 distribution from the George B. Francis Estate, the west bound in that distribution is simply "by Highway." Construction of this in the mosaic of relevant deeds requires as a matter of law, construing this "by highway" west bound to mean Thorpe Avenue as that highway southerly of the Thorpe parcel (Parcel G which William J. Ives had conveyed to George W. Thorpe in 1873) which, in turn, is the westerly bound of Parcel A.
We, therefore, cannot accept any claim of Shoneck that his claims of any west bound in his 1940 deed, after construction of the deeds of record, creates any genuine issue of material fact in the face of Medway's documentation as to its record title.
Going on, we now examine those specific claims of the existence of a genuine issue of material fact which it is claimed to be as raised in Shoneck's brief. Because of the complexity of the materials submitted by both Medway and Shoneck certain repetition of what we have already said will probably take place as we proceed.
In his brief Shoneck claims that there are "inaccuracies and inconsistencies in the facts and conclusions set forth in Parts II and III of the plaintiff's memorandum." Here Shoneck refers to certain claims of Medway as to bounds appearing in certain deeds. He cites a statement from Medway's memorandum that "all the deeds in the claim of title to Lot F to the northeast of Lot B also refer to George B. Francis to the South and West." In addressing this claim Shoneck here refers to one deed to support this: a warranty deed of thirty acres in 1879 from William J. Ives to John Douglass (whom the deeds before the court show was a predecessor of Shoneck). The bound involved there states bounded. . . ." South partly by land of John Douglass and party by land now or formerly of George Francis. . ." This claims is not correct as the deeds show that George B. Francis and John Douglass were owners to the south, the former of of lot C and the latter of Lot E. Even if it were correct, it would not create a genuine issue of material fact as a construction of the deeds bearing on this recognize, as we have shown, George B. Francis as an abutter to the South of Lot F. Here, and throughout our discussions of construing the deeds involved we not only keep in mind the legal principles already recited but also the Connecticut Bar Association Standards of Title (1980) (Standards). In recognizing that the Standards have certain applicability our Appellate Court has said "The Standards of Title" establish the custom in the legal community, [but] are not controlling, contractually or otherwise. . . Carter v. Girasulo,34 Conn. Sup. 507, 513 (1976)" Cardillo v. Cardillo, 27 Conn. App. 208,213 (1992). In Cole v. Steinberg, 144 Conn. 629 (1957) our Supreme Court referred to the Standards in determining the marketability of title. This court, however, recognizes their CT Page 6029 utility in conveyancing practice.
Standard 10.1 entitled "Descriptions" is relevant to our analysis. That standard states:"
"WHEN DEFECTIVE DESCRIPTIONS DO NOT IMPAIR MARKETABILITY
Errors, irregularities and deficiencies in property descriptions in the chain of title do not impair marketability unless, after all circumstances of record are taken into account, a substantial uncertainty exists as to the land which was conveyed or intended to be conveyed, or the description falls beneath the minimal requirement of sufficiency and definiteness which is essential to an effective conveyance. Lapse of time, subsequent conveyances, the manifest or typographical nature of errors or omissions, accepted rules of construction, and other considerations should be relied upon to approve marginally sufficient or questionable descriptions." (underlying added). This Standard notes by way of comment to it that "essentially, a sufficient description is one which affords the means of identifying the particular property intended to be conveyed. . . ." Case law earlier cited and this Standard require the conclusion that this claim creates no genuine issue of material fact.
The Standards, as well as legal principle cited, also furnish guidance on Shoneck's next claim where he refers to the following statement in Medway's brief "Deeds in the chain in (sic) title to Lot D to the Northwest of Lot B again refer to the George B. Francis land to the east. See Footnote 4." Footnote 4 refers to three deeds: A warranty deed from Michael Fleming to John Kelly recorded on December 3, 1973 (which is Parcel D); A warranty deed, recorded March 13, 1872, from William J. Ives to Michael Fleming containing fifteen acres (which is Parcel D); a warranty deed, recorded December 3, 1873 from John Kelly to Rosa Fleming, containing fifteen acres more or less (which is Parcel D). It would appear that the east bound in each of these three deeds is William J. Ives who did own of record Parcel F to the east of Lot D when these three warranty deeds were recorded; this is the inconsistency or inaccuracy claimed.
Medway's response to this argument is now examined. Initially, Medway argues that it does not claim that all of the deeds in the chain of title to Parcel D refer to George B. Francis. Understanding as the parties do the significance of the recognition of a George B. Francis bound in identifying the location of Parcels B and C (and ultimately Parcel A) the court agrees with Medway's response. It points out that the March 13, 1872 warranty deed from William Ives to Michael Fleming of Parcel D was about one month before the April 27, 1872 warranty deed form William Ives to Michael Fleming of Parcels B and C. Implicitly CT Page 6030 acknowledging Shoneck's claims concerning the three warranty deeds of Lot D which Shoneck here attacks, Medway argues that that still makes no genuine issue of material fact as to its claim because of the significance that later deeds on their face recognize George B. Francis as to the owner of Parcels B and C. Medway correctly points out that George B. Francis did not own Parcels B and C when Ives gave the March 13, 1872 deed to Michael Fleming so Francis could not be referred to as having a south bound on Parcel D. It also correctly argues that, as to the south bound of Parcel D, the other two warranty deeds, i.e. the two December 3, 1873 deeds from Michael Fleming, just carry forward the same description of Lot D as in the deed by which Michael Fleming got title from William J. Ives in 1872. Not only do these deeds show the east bound on William Ives of Lot F (which he did not convey to John Douglass until 1877) but they also show the south bound on William J. Ives who had not yet conveyed the ten acres to the south of Parcel D to George B. Francis (Parcels B and C). In addition, we note that the deeds from Michael Fleming to John Kelly and from John Kelly to Rosa Kelly each contain the recital that the land conveyed by each was the same land conveyed by William J. Ives to Michael Fleming in 1872. The description of the east bound of Parcel D attacked by Shoneck as set out above is, the court agrees with Medway, quite consistent with Medway's claim that the later deeds (after 1873) recognize George B. Francis ownership of Parcels B and C especially when Shoneck does not attack any of the deeds in Medway's chain of title after 1873.[12] The deeds subsequent to 1873 which do recognize, by bounds recited therein, George R. Francis' ownership as to Parcels B and C need not be discussed as Shoneck does not attack them despite Medway's claim they include the disputed property as they do. Their construction further supports Medway's claim here. No genuine issue of material fact is present in this claim concerning Medway's statement in its brief insofar as that refers to the three deeds in 1872 and 1873.
Next, Shoneck refers to another statement in Medway's brief that says: "Much of the Shoneck title is comprised of the 30 acre Lot [Parcel] F, the 15 acre Lot (Parcel) D and the 4 acre Lot (Parcel C), all of which eventually merged under Shoneck's predecessor in title, John Douglass, and all which refer to Lot (Parcel) B prior to being merged." Here again, Shoneck, as he did just above refers to the three warranty deeds all of Parcel D, i.e. William J. Ives to Michael Fleming recorded March 13, 1872; John Kelly to Rosa Fleming recorded December 3, 1873 and Michael Fleming to John Kelly recorded December 3, 1873 none of which he again says refer to land of George B. Francis, the purported owner of said Lot [Parcel] B." Again Shoneck does raise any such question to any document after 1873. This challenge cannot be accepted for the same reason that the earlier attack just above was overruled. In any event, while this quoted assertion of Medway could be said to be advocacy, it is hardly off the mark CT Page 6031 based on a legal construction of the whole record. While Medway has the burden on its Summary Judgment motion, it is for Shoneck to raise a genuine issue of material fact. A legal construction of the deeds in the chains of title do demonstrate that what Shoneck owns of record did, as his chain progresses, comes ultimately through John Douglass and he cannot validly suggest otherwise based on the record. We will not repeat here the deeds by which Douglas acquired all the lands he did and which, as we have demonstrated, all eventually come into Shoneck of record. In that regard in Douglass' acquisition of Parcel D in 1906 not only is the west bound on George Thorpe (Parcel G), but the east bound is partly on John Douglass (Parcel F was earlier acquired by him from William J. Ives on 1877) and is partly George L. Francis (Parcel B, thus recognizing George L. Francis ownership of Parcel B). The south bound is on James Fleming (Parcel C which James Fleming acquired from George B. Francis earlier in 1878). Any argument that the south bound in this deed creates a genuine issue of material cannot withstand the legal construction of these and other deeds of record.[13]
We next consider Shoneck's argument that the claim that the 1947 Boyce survey produced by Medway when considered with the three surveys produced by him create a genuine issue of material fact. Medway claims the Boyce Survey is of the disputed land and supports its claim of record title. On the other hand, Shoneck claims that his three surveys are of the disputed land and support his claim of record title to it. Thus, Shoneck contends that his surveys raise genuine issues of material fact. This court does not agree.
Concerning this claim there are appended to Shoneck's opposition are three maps or surveys which he claims indicate that he owns the disputed land. The question to be discussed here is whether any or all of these surveys create a genuine issue of material fact under the circumstances as to the ownership of record of such property. He contends they do vis a vis Medway 1947 Boyce map; Medway contends otherwise.
It is apparent that the three Shoneck surveys have all been filed. An examination of each of them, i.e. the 1966 (revised in 1979) and 1979 Johnson maps and the Soroka map of 1985 all contain notations on their face that "all boundaries showing as claimed by Raymond Shoneck."[14] Among the materials attached to Medway's motion are portions of deposition testimony of both surveyors Johnson and Soroka. Upon inquiry at his deposition as to how he determined the boundaries of the property the surveyor Johnson said that the defendant Shoneck "showed them to me." In the preparation of his surveys Johnson testified that he did not make any examination of the land records although it was his standard practice to do so in making a survey. While a personal check of CT Page 6032 the land records by the surveyor was "definitely" the ordinary thing to do, Johnson did not do so. Johnson said that this "was probably the only one [survey] I ever did without doing that." He also had never seen the recorded 1947 Boyce survey until his deposition when it was shown to him. Soroka testified on deposition that he prepared his survey based solely on the two Johnson maps and he, too, did not examine any land records. In sum, the boundaries and the acreage encompassed on the two Johnson surveys and the Soroka survey are premised upon the representations of Shoneck with neither Johnson or Soroka themselves having made any examination of the land records. Accordingly, none of these three surveys create a genuine issue of material fact on this motion which concerns record title.
Some comment should be made about the Wallingford assessors records as they are referred to by both Medway and Shoneck. Medway contends that other public records provide further confirmation of its claim to the disputed property upon which it alone maintains it has been paying taxes to the town of Wallingford at least until 1982 and since then from which year apparently Shoneck it is claimed has also been paying taxes upon so much of the disputed portion that is in Wallingford. Shoneck, in challenging Medway's claim here argues that in 1982 the Wallingford assessor's records indicate an increase in land owned by him in Wallingford from 10 acres, more or less, to 34 acres, more or less. He, however, does not meet or answer Medway's claim that this is, to say the least, highly unusual, in view of the fact that Shoneck has admittedly not acquired any additional land here in Wallingford since 1940 when he acquired the land from Meriden National Bank. Nor does he answer Medway's argument that the Wallingford Assessor's map has never been changed to show that he owns any more land than 10 acres, more or less, although the Wallingford engineers update the assessors' maps every year in Wallingford. This court, even assuming arguendo that Shoneck is correct when he says "assessor's maps do not have the legal validity of a map or survey by a registered licensed surveyor," cannot conclude that this creates a genuine issue of material fact on this summary judgment motion.
That is so in this case in addition to what has already been said because of certain other materials appended to Medway's motion. Medway deposed one Barta, the Wallingford assessor. Barta testified that Shoneck came to see him with a map Shoneck had and told Barta that he was not being assessed for all the acreage he owned in Wallingford and so Shoneck wanted his acreage assessed increased from the 10 acres, more or less, he was being assessed for, to 34 acres. Barta did increase the acreage assessed raising it to show 34 acres based on the map Shoneck showed to him. Barta's position was if a person tells him they own more acreage than he is being assessed for them Barta would CT Page 6033 add the increased acreage to the grand list. Although Barta increased the acreage he did not change any of the boundary lines on the assessor's map. This prong of the argument does not create a genuine issue of material fact.
This court concludes that Medway's motion for summary judgment as to Count One of Shoneck's counterclaim should be, and is granted as there exists no genuine issue as to a material fact as to Medway's record title ownership of the disputed property as that is depicted in Medway's Exhibit 1, i.e. the Boyce map.
Arthur H. Healey State Trial Referee